STATE OF NORTH CAROLINA v. JIMMIE RICHARD JENKINS

No. 846SC948

(Filed 16 April 1985)

**1. Narcotics § 4.3— manufacturing marijuana—sufficiency of evidence**

The State's evidence placed defendant in such close juxtaposition to growing marijuana as to justify a jury finding that defendant was engaged in its manufacture where it tended to show that six patches of marijuana, some visible from defendant's mobile home, were growing in the environs of defendant's home; defendant acknowledged the presence of "a lot of marijuana" around his home; paths led from defendant's home to these fields; defendant acknowledged being in one of the marijuana patches; a shoeprint similar to the print of a shoe defendant was wearing was found in that patch, which had been watered; defendant's shoes were muddy although the weather had been dry; defendant had a water tank on his truck underneath a shed behind his home; manure had been spread on the fields; a bucket of manure was found beside defendant's home; shavings of the same material as five-gallon buckets of marijuana plants were found in the shed behind defendant's home; and defendant stated that he was custodian of the property and worked there.

**2. Criminal Law § 42.6— marijuana plant—failure to show chain of custody— harmless error**

The admission of a marijuana plant into evidence when a chain of custody had not been adequately established was harmless error where other samples of marijuana taken from the same fields were analyzed and admitted into evidence after a proper chain of custody had been established.

**3. Narcotics § 3.3— acceptance of chemist as expert in marijuana identification**

The trial court did not err in accepting an S.B.I. chemist as an expert in marijuana identification where the chemist testified that her duties with the S.B.I. consisted of analyzing substances for the presence of controlled substances, including marijuana, that she had been so employed for almost two years, and that she had had special training in the analysis of controlled substances.

**4. Narcotics § 1.3— manufacturing and possession of marijuana—neither lesser offense of the other**

Manufacturing marijuana and possession of marijuana are separate and distinct statutory offenses, neither of which is a lesser-included offense of the other.

APPEAL by defendant from *Watts, Judge*. Judgment entered 16 March 1984 in Superior Court, HALIFAX County. Heard in the Court of Appeals 15 March 1985.

Defendant was tried and convicted on an indictment charging him with manufacturing marijuana. The State presented evidence tending to show the following:

On 8 September 1983, the State Bureau of Investigation, while conducting an aerial search for marijuana fields, found several fields of marijuana near a mobile home in Halifax County. Deputies from the Halifax County Sheriff's Department were dispatched to investigate these fields. The first deputy on the scene, Palmer Aycock, drove into the yard of the mobile home, saw defendant in the backyard, stopped and told defendant that he was looking for fields of marijuana. Defendant told him that there was "a lot of marijuana" behind his mobile home and wanted to know if he was under arrest. With defendant's permission, Deputy Aycock, following the instructions of a pilot flying overhead, searched the area behind defendant's house.

In the backyard behind the defendant's mobile home stood a shed. Behind the shed was a garden. About 25 yards below the garden, Deputy Aycock found, in a pit, 42 five gallon buckets containing plants which were subsequently identified as marijuana plants. Twenty yards to the east of the pit, Deputy Aycock found approximately one hundred plants growing in raised, bedded rows. The soil in this patch was wet, although the weather had been dry and no rain had fallen for approximately one month and a half. A path from defendant's mobile home ran to this patch. Deputy Aycock returned towards the mobile home and found a third patch of marijuana, consisting of five plants, growing 125 steps from defendant's mobile home. About this time, other officers arrived. They went across the backyard eastward and followed a path which led to a fourth patch of marijuana, which too was in bedded rows. A path led from this field to a fifth field, from which a path led to a sixth field of marijuana. Altogether, 621 marijuana plants were seized by the deputies. Some of the fields were visible from defendant's mobile home.

Manure had been spread on some of the patches. A five gallon bucket containing manure was found beside the well on the west side of defendant's home. In the second patch, where the soil

was wet, a shoeprint had been left in the mud. This shoeprint had diamond shaped designs on the sole. At the request of the officers, defendant showed them the bottom of his shoes, which had diamond shaped designs on the soles. The tops of defendant's shoes were also muddy. Defendant initially denied the footprint was his or ever being in the field, but he later told the officer that he could have been in the field, but that he did not know what marijuana looked like.

Underneath the shed behind defendant's mobile home, the officers found a pickup truck with a large water tank, with two water hoses connected to it in the back. Defendant told the officers that the truck was his and that he had been using it to water the garden, which was behind the shed. However, beside the shed was a water spigot to which a 30 to 40 foot long garden hose was attached. The garden was approximately 20 feet behind the shed. The garden soil was dry.

Inside the shed officers found small plastic shavings, five gallon containers similar to the ones in which the marijuana plants were found and a drill. Holes had been bored in the bottoms and sides of the five gallon containers containing marijuana plants. Laboratory tests conducted on the shavings and containers in which the plants were found revealed that they were composed of the same material, polyethylene, and that the shavings could have come from the five gallon plant containers.

Defendant told the officers that the property was owned by a third person, but that he was custodian of the property and worked there.

Defendant presented no evidence.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Fred R. Gamin and Associate Attorney Victor H. E. Morgan, Jr., for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defenders Robin E. Hudson and Geoffrey C. Mangum, for defendant appellant.*

JOHNSON, Judge.

Defendant first contends that the court erred in denying his motion to dismiss at the close of the evidence.

Upon a motion to dismiss, all of the evidence favorable to the State, whether competent or incompetent, must be considered and taken as true, giving the State every inference of fact which may be deduced from the evidence. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The court is not required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a motion to dismiss. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). If more than a scintilla of evidence is presented to support the indictment, the case must be submitted to the jury. *State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684, *cert. denied*, 439 U.S. 830, 58 L.Ed. 2d 124, 99 S.Ct. 107 (1978). The rule is the same whether the evidence is circumstantial, direct or a combination of both. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

G.S. 90-95(a)(1) makes it a crime for one to manufacture a controlled substance. Marijuana is a controlled substance. G.S. 90-94. The manufacture of a controlled substance consists of its "production, preparation, propagation, compounding, conversion, or processing . . . by any means." G.S. 90-87(15). The evidence in the present case clearly showed marijuana was being produced. The question is whether the State presented sufficient evidence to show defendant was involved in its production.

[1] The evidence in the present case shows that six patches of marijuana, some visible from defendant's home, were growing in the environs of defendant's home; that defendant acknowledged the presence of "a lot of marijuana" around his home; that paths led from defendant's mobile home to these fields; that defendant acknowledged being in one of the marijuana patches; that a shoeprint similar to defendant's was found in that patch, which had been watered; that defendant's shoes were muddy, although the weather had been dry; that defendant had a water tank on his truck underneath the shed; that manure had been spread on the fields; that a bucket of manure was found beside defendant's mobile home; that shavings of the same material as the five gallon buckets of marijuana plants were found in the shed; and that defendant stated he was custodian of the property and worked there. We hold the foregoing evidence placed defendant in such "close juxtaposition" to the marijuana as to justify a jury finding that defendant was engaged in its manufacture. *State v. Shufford*, 34 N.C. App. 115, 237 S.E. 2d 481, *disc. rev. denied*, 293 N.C. 592,

239 S.E. 2d 265 (1977). The evidence amounted to more than just a mere suspicion or conjecture.

[2] Defendant next contends that the court erred in admitting one four foot high marijuana plant into evidence because a complete chain of custody was not shown. Assuming *arguendo* that the chain of custody was not adequately established, we think the admission of the plant was harmless error. Other samples of marijuana taken from these fields were analyzed and admitted into evidence after a proper chain of custody had been established. There was also plenary evidence that many of the marijuana plants seized were four to five feet tall. Defendant has thus failed to show that a different outcome might have occurred if the plant had not been received into evidence. G.S. 15A-1443(a).

[3] Defendant next contends that the court erred in accepting a chemist as an expert witness in the field of marijuana identification, and in admitting her opinion as to the nature of the material seized from the fields. As defendant correctly states, the general rule is that the determination of whether a witness qualifies as an expert is a factual one which is ordinarily within the exclusive province of the trial judge whose finding will not be disturbed unless there is no competent evidence to support it or an abuse of discretion. 1 H. Brandis on North Carolina Evidence sec. 133 (1982). One is qualified as an expert if, through study or experience, he is better qualified than the jury to form an opinion on the particular subject. *Id.* The witness in the present case testified that she was a chemist with the State Bureau of Investigation, whose duties consisted of the analysis of substances for the presence of controlled substances, including marijuana; that she had been so employed for almost two years; and that she had had special training in the analysis of controlled substances. The foregoing evidence was sufficient to support the trial court's acceptance of the witness as an expert. Her opinion, therefore, was properly admitted. This contention is overruled.

[4] Defendant's remaining contention is that the court erred in refusing to submit to the jury the offense of possession of marijuana. He argues that possession of marijuana, which is a crime under G.S. 90-95(a)(3), is a lesser included offense of manufacturing marijuana. This contention has no merit. Manufacturing marijuana and possession of marijuana are separate and distinct statutory offenses, neither of which is a lesser included offense of

the other. *State v. Rosser*, 54 N.C. App. 660, 662, 284 S.E. 2d 130, 131 (1981).

For the foregoing reasons, we find no error in defendant's trial or conviction.

No error.

Judges WHICHARD and EAGLES concur.