STATE OF NORTH CAROLINA v. JUDGE JONES

No. 8812SC1284

(Filed 5 December 1989)

1. **Searches and Seizures § 12 (NCI3d) — stop of car on suspicion of impaired driver — reasonableness**

    An officer's stop of the car in which defendant was a passenger to investigate the driver's impairment was lawful where the car was being driven on an interstate 20 mph below the speed limit, and the driver was weaving within his lane, since those actions were sufficient to raise a suspicion of an impaired driver in a reasonable and experienced officer's mind.

    **Am Jur 2d, Searches and Seizures §§ 16, 39, 40, 46, 53.**

2. **Searches and Seizures § 12 (NCI3d) — suspicion of impaired driver — trooper's stop of vehicle — permissible scope of investigation not exceeded**

    There was no merit to defendant's contention that a trooper exceeded the permissible scope of the initial stop of a vehicle

in which defendant was a passenger because the trooper's investigation extended beyond his suspicion of the driver's impairment, since the initial investigation was reasonably related and limited to his suspicions that the driver was impaired; his further investigation of the driver's identity was reasonable when he gave the trooper two different names; it was reasonable for the trooper to continue his investigation of the driver's identity by asking defendant questions concerning the driver; the driver gave the trooper a copy of the car lease agreement which contained defendant's name; and that the trooper's conversation with defendant passenger about the driver's identity resulted in defendant's giving his voluntary consent to a search of the vehicle did not support defendant's arguments that the trooper exceeded the permissible scope of his investigation.

**Am Jur 2d, Searches and Seizures §§ 16, 39, 40, 46, 53.**

**3. Searches and Seizures § 18 (NCI3d) — consent to search vehicle and suitcase — opening of package in suitcase — contents admissible**

Because defendant passenger gave the trooper who stopped his car for suspicion of impaired driving permission to search the entire contents of defendant's suitcase, and did not retract or limit the consent, the trooper had defendant's consent to open a package found in the suitcase, and the trial court did not err in allowing the drug contents of the package into evidence at trial.

**Am Jur 2d, Searches and Seizures §§ 16, 39, 40, 46, 53.**

**4. Narcotics § 4 (NCI3d) — possession of drug paraphernalia — sufficiency of evidence**

Circumstantial evidence was substantial and supported an inference that scales found in the trunk of defendant's car were "drug paraphernalia" sufficient for the trial court to submit the issue of possession of drug paraphernalia to the jury where it tended to show that the scales were found in defendant's trunk beside his suitcase which contained 54 grams of pure cocaine; a police officer qualified as an expert on drug investigations testified that the scales were used as a common weighing instrument for controlled substances; the large amount of cocaine seized would support an inference that scales would be needed to divide it into smaller amounts

STATE v. JONES

[96 N.C. App. 389 (1989)]

for resale; the pureness of the cocaine would support an inference that the cocaine would require mixing with a diluting substance and reweighing before sale or use; it was improbable that this type of scales could be used to weigh produce or ammunition, as defendant claimed; and defendant attempted to flee the scene upon discovery of the cocaine, permitting the inference that defendant's guilt caused him to flee.

**Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 47, 47.5.**

**5. Narcotics § 4.5 (NCI3d) — three offenses — instructions on each offense proper**

In a prosecution of defendant for trafficking in cocaine by possession, trafficking in cocaine by transportation, and possession of drug paraphernalia with intent to use, the trial court sufficiently informed the jury of their options in finding defendant guilty or not guilty of each offense, and no defect existed in the jury charge.

**Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 47, 47.5.**

APPEAL by defendant from judgment and commitment entered 16 June 1988 by *Judge E. Lynn Johnson* in CUMBERLAND County Superior Court. Heard in the Court of Appeals 23 August 1989.

*Lacy H. Thornburg, Attorney General, by W. Dale Talbert, Assistant Attorney General, for the State.*

*James R. Parish for defendant-appellant.*

GREENE, Judge.

Defendant appeals his criminal conviction by jury of trafficking in cocaine by possession, trafficking in cocaine by transportation, and possession of drug paraphernalia with intent to use. Defendant also pled guilty to resisting a law enforcement officer, but did not appeal this conviction or sentencing. The trial court sentenced defendant to seven years imprisonment and fined defendant $50,000.00.

Before trial, defendant moved to suppress all evidence uncovered in the Trooper's search of defendant's vehicle, claiming illegal search and seizure. After conducting a suppression hearing, the trial court entered a written order denying defendant's motion.

At the close of all evidence, defendant moved to dismiss the drug paraphernalia charge. The trial court denied defendant's motion.

In support of the trial court's order denying defendant's motion to suppress, it entered detailed findings of fact and conclusions of law. Defendant generally excepted to the trial court's denial of his motion without objecting to the trial court's findings of facts. Accordingly, the findings "are presumed to be supported by competent evidence and are binding on appeal." *Anderson Chevrolet/Olds, Inc. v. Higgins*, 57 N.C. App. 650, 653, 292 S.E.2d 159, 161 (1982).

In summary, these findings reveal the following: a North Carolina State Highway Patrol Trooper ("Trooper") was routinely patroling Interstate Highway 95 ("I-95") near Fayetteville at approximately noon on 30 September 1987, when he observed defendant's vehicle traveling in the opposite direction on I-95. While passing defendant's car traveling in the opposite direction he saw that it was traveling 'at a speed substantially slower than other vehicles normally travel on [I-95]'; he crossed the median to follow defendant's car and measured its speed at approximately 45 miles per hour [20 miles per hour below the posted speed limit]. The Trooper observed defendant's car weave from the white line next to the shoulder of the road to the center line of the highway within its lane of travel. The trial court found as facts that the Trooper had 16 years of experience with the force, that "Trooper . . . has made several thousand arrests for . . . driving while impaired; that low speed can mean a person who is highly intoxicated, is driving defensively, or that there is difficulty with the vehicle, or that the driver is sleepy," in the Trooper's opinion. After the Trooper stopped defendant's car, he asked for the driver's license of the driver. (Driver hereafter is "Whitefield.") Whitefield could not produce a driver's license but presented a car rental contract on which appeared the name of defendant. Whitefield claimed his name was "Slade." At that point, the Trooper called in by radio a license check of "Slade's" license to New York. New York records showed no such license. Whitefield told the Trooper that his name was Whitefield, not Slade. The Trooper then conversed with defendant because the car was leased in defendant's name and because Whitefield had lied about his name. The Trooper conversed with defendant and then asked defendant if his car was carrying "any guns, drugs or contraband," and defendant laughed in reply. The Trooper asked defendant if defendant minded if the Trooper looked in defendant's car, and defendant replied "No." The Trooper

prepared a consent to search form, handed it to defendant, who appeared to read and understand it, signed it and consented to the search of his car. The consent form provided that the Trooper could search defendant's car, luggage and the contents of the luggage. The Trooper discovered triple-beam weighing scales in a box in the trunk, which defendant explained that he used for his produce business. After a suitcase in the trunk was opened, the Trooper found a brown package in the middle of the suitcase, and the package contained white powder. According to the Trooper, defendant and Whitefield appeared "stunn[ed]." The Trooper ordered the men to lay down on the road and defendant was reluctant to do so. When the Trooper went to defendant's car to ask the remaining passenger to step out, defendant jumped up, ran to the trunk, grabbed the package and ran away from the car, throwing the package into bushes. The Trooper chased and captured defendant. The trial court further found and concluded:

13. That Trooper . . . has no personal knowledge or training in, 'drug profile,' (sic) matters.

14. That [the] Trooper did not [have] his gun drawn at the time the consent form was signed; that the signing of the consent was voluntary, knowingly, and intelligently made by the Defendant without coercion, duress or threats.

15. That the actions of [the] Trooper are consistent with his training and experience and his duty to enforce the motor vehicle laws of this state.

16. That the Defendant at no time, after the consent form was signed, objected to the actions of [the] Trooper.

17. That Alfonzo Whitefield was issued a citation for no operator's license.

CONCLUSIONS OF LAW

1. That none of the Defendant's rights, either Federal or State, have been violated.

2. That [the] Trooper['s] actions were based upon reasonable and articulable suspicion in fulfillment of his duties as a North Carolina Highway Patrolman.

3. That the Defendant's consent to search was voluntarily, knowingly and intelligently made and without coercion, duress or threats.

After the State and defendant presented evidence at trial, the trial court instructed the jury on each of the drug offenses, and defendant did not except to the instructions. After defendant's conviction on each of the offenses, the trial court proceeded to the sentencing phase of the trial.

---

The issues presented are whether: (I) the trial court should have excluded evidence seized in an investigatory stop of defendant's car because the stop was unreasonable; (II) the trial court should have excluded evidence seized after defendant consented to a search of his car, because the search exceeded the scope of defendant's consent; (III) the trial court erred in denying defendant's motion to dismiss the charge of possession of drug paraphernalia because the State failed to introduce sufficient circumstantial evidence to show that triple-beam weighing scales were "drug paraphernalia" under N.C.G.S. § 90-113.21(b); (IV) it was plain error for the trial court to fail to instruct the jury that it had the option of finding defendant guilty or innocent of each offense charged; and (V) the trial court erred in failing to arrest judgment upon one of two drug convictions because 'possession' is a lesser included offense of 'transporting' a drug.

I

Defendant argues that evidence which the Trooper obtained in searching his car was the result of an invalid stop of his car which violated his Fourth Amendment and North Carolina constitutional rights, for two reasons: (A) the Trooper lacked an 'articulable suspicion of wrongdoing' to stop defendant's car and (B) the Trooper's inquiry about other possible traffic offenses exceeded the reasonable scope of an investigation of a driving while impaired (DWI) offense.

A

[1] An officer's stop of a car to investigate a potential traffic offense does not require a complete showing of probable cause because of its limited intrusiveness, but as a limited seizure it is governed by the reasonableness standards of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16, 20 L.Ed.2d 889, 903 (1968) (*"Terry"*). If the investigatory seizure is invalid, evidence resulting from the warrantless stop is inadmissible under the 'exclusionary rule' both according to the federal constitution and our state constitution. *Id.* at 12, 20 L.Ed.2d at 900. (Fourth Amendment of the

U. S. Constitution protects against unreasonable searches and seizures); *State v. Carter*, 322 N.C. 709, 712-13, 370 S.E.2d 553, 555 (1988) (N. C. Constitution article I, § 20 forbids unreasonable search and seizure).

A warrantless investigatory stop of a vehicle must be "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 66 L.Ed.2d 621, 628 (1981) (*"Cortez"*). Our Court has stated this standard as:

> [C]onsistent with the Fourth and Fourteenth Amendments, a person or vehicle may be detained for further investigation by a law enforcement officer without a warrant and without probable cause to believe a crime has been committed if the officer has a reasonable suspicion, that can be articulated, that a crime is being committed. The detention must not be unreasonable in length and the investigation must be reasonable.

*State v. Trapper*, 48 N.C. App. 481, 486, 269 S.E.2d 680, 683, *appeal dismissed*, 301 N.C. 405, 273 S.E.2d 450, *cert. denied*, 451 U.S. 997, 68 L.Ed.2d 856 (1981). *See also State v. Drewyore*, 95 N.C. App. 283, 288, 382 S.E.2d 825, 828 (1989).

In viewing the "totality of the circumstances" to question the reasonableness of the seizure, we weigh the Trooper's articulated reasons as " 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143 (1979) (citation omitted).

We determine that the trial court's findings of fact showed that despite the lack of an observed and verifiable traffic code violation by Whitefield, his driving 20 miles per hour below the speed limit and weaving within his lane were actions sufficient to raise a suspicion of an impaired driver in a reasonable and experienced Trooper's mind. *See White v. Oklahoma Dept. of Public Safety*, 606 P.2d 1131 (Okla. 1980) (car driven approximately 15-20 miles per hour under the speed limit and weaving within its lane of travel are grounds for a reasonable suspicion that the car was driven by an impaired driver despite the lack of an observed traffic offense).

Defendant complains that the true reason for the stop was the Trooper's 'hunch' that Whitefield and defendant matched a

drug courier profile and that the pretextual nature of the stop is illustrated by the Trooper's failure to actively investigate Whitefield's suspected impairment. Defendant's argument is not supported by the record.

"A police officer . . . is not constitutionally required to be certain that a crime has occurred when he makes a stop." *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987).

The trial court's findings of fact show that the Trooper investigated Whitefield's impairment by stopping the car and questioning Whitefield. That Whitefield was not charged thereafter with a DWI offense is not relevant to the Trooper's initial suspicions.

B

[2] Defendant next argues that the Trooper exceeded the permissible scope of the initial stop because the Trooper's investigation extended beyond his suspicion of Whitefield's impairment. Defendant's contention is tantamount to arguing that the Trooper's otherwise reasonable investigation becomes unreasonable if the Trooper investigates suspicious matters uncovered during the initial investigation. We disagree.

"[T]he stop and inquiry must be 'reasonably related in scope to the justification for the initiation.' " *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 45 L.Ed.2d 607, 617 (1975), quoting *Terry*, at 29, 20 L.Ed.2d at 910. If the investigation is not reasonably related to the reason for the stop, evidence uncovered is inadmissible, according to the 'exclusionary rule.' *Terry*, at 29, 20 L.Ed.2d at 910. "Typically, . . . the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439, 82 L.Ed.2d 317, 334 (1984). "When an officer is unsure of the identity of a suspect, he *must* take reasonable steps to confirm the identity of the individual under suspicion." *State v. Lynch*, 94 N.C. App. 330, 333, 380 S.E.2d 397, 399 (1989) (emphasis added).

The findings show that the Trooper stopped defendant's vehicle on a suspicion of the offense of impaired driving, and questioned Whitefield about his identity. Whitefield gave the Trooper the fictitious name of 'Slade,' and then offered the Trooper the name 'Whitefield' for the license check. The Trooper cited Whitefield for failing to have a valid driver's license.

We determine that the Trooper's initial investigation was reasonably related and limited to his suspicions that Whitefield was impaired, and that his further investigation of Whitefield's identity was reasonable when Whitefield gave the Trooper two different names. We also determine that it was reasonable for the Trooper to continue his investigation of Whitefield's identity by asking defendant questions concerning Whitefield. Whitefield gave the Trooper a copy of the car lease agreement, which contained defendant's name. That the Trooper's conversation with defendant about Whitefield's identity resulted in defendant giving his voluntary consent to the search does not support defendant's arguments that the Trooper exceeded the permissible scope of his investigation.

In summary, we determine that the Trooper made a valid traffic stop during which the Trooper conducted an investigation reasonable in subject matter and in scope.

II

[3] Defendant also contends that the trial court erred in its refusal to suppress the drug contents of a package because defendant contends that a search of a wrapped, taped package in a suitcase in defendant's car trunk was unreasonable, beyond the scope of the consent that he gave the Trooper for a search of the car, his luggage and its contents.

Generally, the Fourth Amendment and article I, § 20 of the North Carolina Constitution require issuance of a warrant based on probable cause for searches. However, our courts recognize an exception to this rule when the search is based on the consent of the detainee. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 36 L.Ed.2d 854, 858 (1973); *State v. Belk*, 268 N.C. 320, 322, 150 S.E.2d 481, 483 (1966) ("*Belk*"). Defendant does not dispute the trial court's finding that defendant's consent to the search was voluntarily, knowingly and intelligently given, only that the Trooper exceeded the scope of defendant's consent.

The scope of the search can be no broader than the scope of the consent. *United States v. Ross*, 456 U.S. 798, 821, 72 L.Ed.2d 572, 591 (1982). Because defendant gave the Trooper permission to search the entire contents of defendant's suitcase, and did not retract or limit the consent, we determine that the Trooper had defendant's consent to open the package and the trial court did not err in allowing the contents of the package into evidence at

trial. *Belk*, at 323, 150 S.E.2d at 483 (defendant's failure to object to the scope of a search during the search precludes a later objection at a hearing to suppress evidence).

III

[4] Defendant argues that the trial court erred in refusing to dismiss the charge of possession of drug paraphernalia. N.C.G.S. § 90-113.22 (1981). Defendant submits that the State failed to introduce substantial evidence that the weighing scales met the definition of "drug paraphernalia" defined by N.C.G.S. § 90-113.21 (1981). We disagree.

"On a motion to dismiss, the evidence must be viewed in the light most favorable to the State 'with inconsistencies and contradictions . . . disregarded.'" *State v. Styles*, 93 N.C. App. 596, 602, 379 S.E.2d 255, 259 (1989) (citation omitted). If substantial evidence exists to support each essential element of the crime charged, the judge must submit the case to the jury. *Id.* "If more than a scintilla of evidence is presented to support the indictment, the case must be submitted to the jury. . . . The rule is the same whether the evidence is circumstantial, direct or a combination of both." *State v. Jenkins*, 74 N.C. App. 295, 298, 328 S.E.2d 460, 462 (1985) (citations omitted). The weight of circumstantial evidence is for the jury. *State v. Hamilton*, 264 N.C. 277, 286-87, 141 S.E.2d 506, 513, *cert. denied*, 384 U.S. 1020, 16 L.Ed.2d 1044 (1966).

It is apparent to us that N.C.G.S. § 90-113.21 provides for proof of 'drug paraphernalia' through both types of evidence, direct and circumstantial, in sections (a) and (b), respectively.

N.C.G.S. § 90-113.21(a)(5) specifically provides that if direct evidence that the items at issue are "[s]cales and balances for weighing or measuring controlled substances," they are 'drug paraphernalia.' The State introduced circumstantial evidence of the character of the scales as 'drug paraphernalia' as permitted by N.C.G.S. § 90-113.21(b): "The following [14 factors], along with all other relevant evidence, may be considered in determining whether an object is drug paraphernalia . . . ."

Our review of the evidence presented at trial shows no direct evidence that the scales were 'for weighing or measuring' the cocaine; neither the State nor defendant disputes that the scales were new and unused for any purpose. The State introduced circumstantial evidence, as section (b) permits. Viewing the evidence

in the light most favorable to the State, the State introduced circumstantial evidence tending to support statutory factors 3, 4, and 13: the Trooper found the scales in defendant's trunk beside his suitcase, showing: "(3) [t]he proximity of the object to a violation of the Controlled Substances Act"; and "(4) [t]he proximity of the object to a controlled substance." The State also qualified a police officer as an expert on drug investigations and introduced his testimony to show "(13) [e]xpert testimony concerning [the scale's] use" as a common weighing instrument for controlled substances.

In addition to the evidence offered by the State to show the enumerated statutory elements, the State offered 'other relevant evidence' as N.C.G.S. § 90-113.21(b) permits, including the testimony of a police officer experienced in drug offenses, showing: that the large amount of cocaine seized [54 grams] permits the inference that scales would be needed to divide up the cocaine into smaller amounts for resale; that the pureness of the cocaine supports an inference that the cocaine would require mixing with a diluting substance and reweighing before sale or use; and that it was improbable that this type of scales could be used to weigh produce or ammunition, as defendant claimed. Finally, the State offered evidence of the defendant's flight from the scene of the stop after the Trooper discovered the cocaine, which permits the inference that defendant's guilt caused him to flee. *State v. Epps*, 213 N.C. 709, 714, 197 S.E. 580, 583 (1938) (circumstance of suspect's flight immediately after discovery of contraband liquor in defendant's car is for jury's consideration in determining defendant's innocence or guilt).

We determine that this circumstantial evidence is substantial and supports an inference that the scales were 'drug paraphernalia' sufficient for the trial court to submit the issue to the jury.

IV

[5] Defendant next contends that the trial court committed plain error in its jury instruction by failing to instruct the jury that it must consider separately each offense with which defendant was charged. Defendant failed to object to the jury charge before the jury retired, and submits the issue to this court under the "plain error" standard of review, which is available when a defendant fails to comply with the Rules of Appellate Procedure. *State v. Odom*, 307 N.C. 655, 659, 300 S.E.2d 375, 378 (1983). Defendant's contention is unsupported by the record.

It is elemental that in applying this standard, we first review the jury charge to determine whether an instructional defect occurred. *State v. Sams*, 317 N.C. 230, 241, 345 S.E.2d 179, 186 (1986).

The trial judge must instruct the jury that it has the option of "return[ing] a verdict of guilty of one offense and not guilty of [an]other offense" if defendant is charged with more than one offense. *State v. Rogers*, 9 N.C. App. 702, 704, 177 S.E.2d 301, 302, *app. on oth. grounds*, 12 N.C. App. 160, 182 S.E.2d 660, *cert. denied*, 279 N.C. 513, 183 S.E.2d 690 (1971).

Defendant contends that the jury charge was constitutionally defective because it was susceptible to being interpreted as instructions to group the offenses for the jury's determination of the defendant's guilt or innocence.

The trial judge gave this jury charge:

> . . . The Defendant, Judge Jones, is charged in a three-count Bill of Indictment with the offenses of trafficking in cocaine by possession, trafficking in cocaine by transportation, and possession with the intent to use drug paraphernalia.
>
> *To each of these separate charges*, the Defendant has entered a plea of not guilty.
>
> . . . .
>
> In respect to the *possible verdicts* as to Count Number One, the *options* for the jury are: first, *guilty* of trafficking in cocaine by possession of cocaine in an amount of at least twenty-eight grams but less than two hundred grams; or, *not guilty*.
>
> In respect to Count Number Two, are: *guilty* of trafficking in cocaine by transportation of cocaine in an amount of at least twenty-eight grams, but less than two hundred grams; or, *not guilty*.
>
> In respect to Count Number Three, your *options* are: first, *guilty* of possession with the intent to use drug paraphernalia; or, *not guilty*. [Emphasis added.]

The trial court sufficiently informed the jury of their 'options' in finding defendant guilty or not guilty of each offense, and we determine that no defect existed in the jury charge.

Defendant concedes in his brief that his contention that trafficking in cocaine by possession and trafficking in cocaine by transportation are not separate and distinct offenses is not the law in North Carolina. However, defendant submits that this rule is a violation of constitutional guarantees against double jeopardy because each trafficking offense does not require "proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 76 L.Ed. 306, 309 (1932).

> It is now well-established that convictions for the separate offenses of transporting and possessing a controlled substance are consistent with the intent of the legislature and do not violate the constitutional prohibition against double jeopardy.

*State v. Bogle*, 90 N.C. App. 277, 285, 368 S.E.2d 424, 430, *reversed on other grounds*, 324 N.C. 190, 376 S.E.2d 745 (1989).

We find no merit to defendant's contention.

No error.

Judges JOHNSON and EAGLES concur.