[Nos. 49423-6-I; 49445-7-I;    Division One.    July 21, 2003.]
    49708-1-I.

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT NORMAN DAVIS, ET AL., *Appellants*.

*John R. Crowley* (of *Crowley Leen*), for appellant Davis.

*Dana M. Nelson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant Pecheos.

*Rita J. Griffith*, for appellant Fahrenkrug.

*Norm Maleng, Prosecuting Attorney*, and *Robin E. Sheridan, Deputy*, for respondent.

COLEMAN, J. — In these three consolidated appeals, appellants challenge their convictions and sentences for manufacturing methamphetamine. Appellant Michael Fahrenkrug also challenges his conviction for unlawful possession of a firearm, as well as the jury's special verdict finding that he possessed the firearm while he manufactured methamphetamine. In the published portion of this opinion, we hold that drug possession cannot be a lesser included offense of drug manufacturing. In the unpublished portion of this opinion, we affirm all three defendants' convictions but reverse Fahrenkrug's firearm enhancement, which we dismiss due to insufficient evidence.

FACTS

On March 6, 2001, Cameron Wilson called the Federal Way Police Department to report his suspicions that people were manufacturing methamphetamine at the house of his neighbor, Joyce Hackett. Wilson reported seeing constant car and foot traffic at the house. He also could see people moving tanks, canisters, and buckets in and out of his neighbor's basement and into a moving truck. Federal Way Detective Casey Jones, who specialized in investigating methamphetamine laboratories (meth labs), asked Wilson to keep track of the cars and license plate numbers at Hackett's house.

Two days later, Detective Jones and another detective conducted surveillance outside Hackett's home. They saw at least five cars come and go, each remaining for less than five minutes. They also noticed a U-Haul truck parked in the driveway, which several people opened at various times. In the meantime, Wilson continued to write down license numbers of people visiting Hackett's house. He recorded 23 different plate numbers within four days.

A week later, Wilson called the police again, this time by dialing 911. He had been sitting at his kitchen table eating breakfast when he saw four men carrying several tanks and supplies from Hackett's basement and putting them into the moving van. He called 911 and described the activity to the operator. He said someone had removed the van's license plate and replaced it with another. He also said one of the men was carrying a silver gun with a black handle in a shoulder holster. Wilson later identified that man as appellant Fahrenkrug. Wilson repeatedly asked that he remain anonymous, and he asked the operator to tell the police to wait until the suspects left the driveway to make any arrest so the suspects would not know he was involved.

The 911 operator dispatched several police officers to the scene. When they arrived, the moving van's door was open and the contents were exposed. From several feet away, they could see that the truck contained several propane and

ammonia tanks. They noticed a strong, acidic odor emanating from the moving van.

A man, later identified as Martin Davis, came out of the front door of the house carrying a jacket. Police told him to stop and drop his jacket. He dropped the jacket and started to run, but he stopped when police threatened to shoot. Police arrested him and found a revolver in his front pocket, another gun in his jacket, and three knives on his belt and in his pockets.

Police shouted for the people inside the house to come out. Hackett and her children came out of the house, followed soon thereafter by defendants Fahrenkrug and Constance Pecheos. All were arrested. Police learned that defendant Scott Davis, Martin's brother, was still inside the house.

Detective Casey Jones arrived about 15 minutes after the 911 call. Other officers told him that Davis was still inside the house. Police shouted and left a message on the house's answering machine urging Davis to come out. Another meth lab specialist, Detective Hanson, arrived about a half hour later. Jones and Hanson assembled a team who donned protective gear and went inside the house. They swept each room until they found Davis hiding in an upstairs closet. They arrested him and then continued to go into each room of the house. As they did so, they opened windows to ventilate the house and used a meter to measure the oxygen level. When they went into the basement, the oxygen level dropped. In the basement, Jones saw pots and pans, bases, solvents, lithium battery remnants, and empty packages of pseudoephedrine-based cold medicine, all of which he testified are used to make methamphetamine. He left and wrote an application for a search warrant, which police served the next day.

The State charged six defendants—including the appellants, Hackett, and two others—with manufacturing methamphetamine. The court set the joint trial for May 30, 2001, with a speedy trial expiration date of June 1. On May 30, the trial court held the case until June 1 because the

deputy prosecutor assigned to the case was in trial. At that time five defendants remained. On June 1, the State informed defense counsel that Joyce Hackett intended to testify for the State. That same day, the court placed the case on "standby" because the deputy prosecutor was starting another trial that day with an earlier speedy trial expiration date. On Monday, June 4, 2001, the State requested a one-day extension. On that same day, Hackett entered a plea and became a witness for the State. The trial court granted the extension to June 5. On June 5, Fahrenkrug requested a continuance because defense counsel was scheduled to attend a legal seminar. Both parties signed an order continuing the trial until June 18, 2001. On June 14, Fahrenkrug filed his trial brief, which contained his motion to dismiss for violation of his CrR 3.3 speedy trial rights. On June 18, the State requested a one-day extension because the prosecutor was still in trial on another matter.

On June 19, the four remaining parties convened and the court granted the State's motion to exclude witnesses, which commenced the trial for speedy trial purposes. The parties then discussed their scheduling situations. Counsel for codefendant Daniel Longan participated by teleconference because he was in trial on another matter. He said he expected the other trial to conclude by June 25. Counsel for appellant Scott Davis noted she had a vacation scheduled for July 16-27. Further, the parties informed the court that an interview with witness Wilson still had to take place. The defendants also noted that the speedy trial period had expired on June 1. The court granted a recess until June 25.

The parties reconvened on June 27, the day Longan's attorney finished his trial. Fahrenkrug and the other defendants moved to dismiss on speedy trial grounds and for prosecutorial mismanagement. The trial court denied the motions, finding no mismanagement and finding good cause for extensions due to the attorneys' scheduling conflicts. Defendant Longan pleaded guilty and the remaining three defendants proceeded to trial.

The jury convicted all three defendants of manufacturing methamphetamine. They also convicted Fahrenkrug of unlawful possession of a firearm and found he possessed the firearm while manufacturing methamphetamine.

Additional facts are discussed where relevant.

Possession as Lesser Included Offense of Manufacturing

Appellant Davis argues that the trial court improperly denied his request for an instruction on the lesser included offense of drug possession. We hold that a defendant need not possess a drug to manufacture it, so possession cannot be a lesser included offense of the crime of manufacturing. The trial court, therefore, did not err in failing to give the proposed instruction.

■ Under the *"Workman* test," a trial court should give a lesser included offense instruction where (1) each element of the lesser offense is a necessary element of the greater offense, and (2) the facts support an inference that only the lesser offense was committed. *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (citing *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)). The first prong of this test is a legal prong, whereas the second is a factual prong. *Berlin*, 133 Wn.2d at 546. If the legal prong is not satisfied, the lesser crime cannot be included within the greater, and we need not address the factual prong of the test.

■ No Washington case directly addresses whether drug possession can be a lesser included offense of drug manufacturing under the legal prong of the *Workman* test. A crime can be a lesser included offense of another crime if the greater crime, as charged and prosecuted, necessarily encompasses all the elements of the lesser crime. But where certain crimes are included within another only under the facts of a particular case, the first *Workman* prong is not satisfied. 13A Seth A. Fine & Douglas J. Ende, Washington Practice: Criminal Law § 106, at 10 (2d ed. 1998) (citing *State v. Harris*, 121 Wn.2d 317, 849 P.2d 1216 (1993)). If it is *possible* to commit the greater offense without committing

the lesser offense, the latter is not an included crime. *Harris*, 121 Wn.2d at 321.

In this case, therefore, the pivotal question is whether, under the Washington Uniform Controlled Substances Act (UCSA), chapter 69.50 RCW, it is possible to manufacture a drug without possessing it. It is. The UCSA defines the crime of drug manufacturing broadly:

> "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

RCW 69.50.101(p). As the evidence in this case demonstrates, one can make a number of drugs, including methamphetamine, from ingredients that are not in themselves controlled substances. And under the above definition, a person who knowingly plays even a limited role in the manufacturing process is guilty, even if someone else completes the process. Thus, a person need not possess the final product in order to engage "indirectly" in the "production, preparation, propagation, compounding, conversion, or processing of a controlled substance." RCW 69.50.101(p). In fact, courts have found evidence sufficient to support convictions for manufacturing methamphetamine where the defendants possessed lab equipment and partially processed methamphetamine, but not the final product. *See State v. Todd*, 101 Wn. App. 945, 952, 6 P.3d 86 (2000); *State v. Hepton*, 113 Wn. App. 673, 682-83, 54 P.3d 233 (2002).

Davis argues that even though a person need not actually possess drugs to be guilty of manufacturing them, possession is still a lesser included offense because a person must at least constructively possess drugs to manufacture them. We disagree. A person constructively possesses drugs if he or she exercises dominion or control over them. *See State v. Roberts*, 80 Wn. App. 342, 353, 908 P.2d 892 (1996). Exclusive control is not necessary to establish constructive pos-

session, but mere proximity to drugs is insufficient. *State v. Bradford*, 60 Wn. App. 857, 862, 808 P.2d 174 (1991). But even under a broad definition of constructive possession, a person could knowingly manufacture a controlled substance without constructively possessing it. A person who participates in the beginning stages of manufacture does not exercise dominion or control over the eventual finished product by merely taking part in the process of creating it. Rather, such a person merely exercises dominion and control over the components of the drug before they become a controlled substance.

Further, it is immaterial, under the legal prong of the *Workman* analysis, that the case as presented by the State involved possession and use of the finished product by all the defendants. The question is whether it is *possible* to commit the greater offense, as charged, without committing the lesser offense. *Harris*, 121 Wn.2d at 321; *Berlin*, 133 Wn.2d at 550. Although possession is usually inherent in manufacture, that is not invariably the case, so possession cannot be a lesser included offense. *See* 13A Fine & Ende, *supra*, at 10 (citing *State v. Markle*, 118 Wn.2d 424, 433-37, 823 P.2d 1101 (1992)).

Davis's reliance on *State v. Moore*, 54 Wn. App. 211, 219, 773 P.2d 96 (1989) is misplaced. In *Moore*, this court held that it did not violate double jeopardy to convict a defendant of both possessing over 40 grams of marijuana and manufacturing a controlled substance. In reaching that decision, we neither agreed nor disagreed with Moore's contention that "one cannot manufacture marijuana without possessing it." Instead, we based our holding on the fact that there is no minimum weight requirement for manufacturing, so the elements of the two crimes are not identical. *Moore*, 54 Wn. App. at 219. Thus, we never directly addressed the issue of whether possession is included in manufacture.

Davis also cites cases from two jurisdictions that have held that drug possession may be a lesser included offense of manufacturing. *See Patton v. People*, 35 P.3d 124, 130-31

(Colo. 2001); *Craig v. State*, 314 Ark. 585, 863 S.W.2d 825 (1993). *See also Amado v. State*, 585 So. 2d 282 (Fla. 1991); *People v. Freeman*, 121 Ill. App. 3d 1023, 460 N.E.2d 125, 77 Ill. Dec. 266 (1984). But the majority of jurisdictions that have decided the issue have reached the opposite conclusion. *See Hardie v. State*, 79 S.W.3d 625 (Tex. Crim. App. 2002); *State v. Spivie*, 581 N.W.2d 205 (Iowa Ct. App. 1998); *State v. Guzman*, 140 Or. App. 347, 914 P.2d 1120, 1123 (1996); *Galbreath v. State*, 213 Ga. App. 80, 443 S.E.2d 664, 665 (1994); *State v. Peck*, 143 Wis. 2d 624, 422 N.W.2d 160 (1988); *State v. Jenkins*, 74 N.C. App. 295, 328 S.E.2d 460 (1985). *See also United States v. Campbell*, 652 F.2d 760 (8th Cir. 1981) (holding marijuana possession not necessarily included in crime of attempting to introduce marijuana into federal correctional facility); *Kelly v. United States*, 370 F.2d 227 (D.C. Cir. 1966) (holding possession not necessarily included in crime of facilitating narcotic sale or concealment).

Further, the cases from other jurisdictions that Davis cites in support of his argument lack persuasive reasoning. In *Patton*, the court analogized to cases holding that possession is necessarily included in unlawful use of a controlled substance. *Patton*, 35 P.3d at 131 (citing *People v. Villapando*, 984 P.2d 51 (Colo. 1999)). The court reasoned that "[s]imilarly, we can envision no scenario in which an individual can manufacture methamphetamine without also possessing it." *Patton*, 35 P.3d at 131. As the above discussion illustrates, however, such a scenario *can* be envisioned under Washington's broad manufacturing statute.

We also find *Craig* unpersuasive. In that case, the court reasoned that possession includes both actual and constructive possession, so "[i]n proving the offense of manufacturing, the state must necessarily show the defendant has control of the controlled substance in order to manufacture it. That being so, possession of the substance is necessarily a lesser included of the offense of manufacturing." *Craig*,

863 S.W.2d at 827.[1] The court therefore held that it violated double jeopardy to charge the defendant with manufacturing a marijuana plant after convicting him of possessing the same plant. But the *Craig* court failed to envision the applicability of its holding on drugs other than marijuana, such as methamphetamine, in which the manufacturing process begins with components that are not themselves controlled substances. As concluded above, a defendant can engage in methamphetamine manufacturing without possessing, actually or constructively, the controlled substance that is the final product.

We therefore conclude that the legal prong of the *Workman* test was not satisfied in this case. Drug possession cannot be a lesser included offense of manufacturing. Accordingly, the trial court properly refused to give the Davis-proposed instruction on possession.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record but will not be published. RCW 2.06.040.

GROSSE and APPELWICK, JJ., concur.

Review denied at 151 Wn.2d 1007 (2004).

---

[1] The statutory definition of "manufacture" in *Craig* was functionally identical to Washington's. *Craig*, 863 S.W.2d at 827 (citing ARK. CODE ANN. § 5-64-101(m) (Michie Supp. 1991).