An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-214

Filed 7 January 2026

Cherokee County, Nos. 23CR440320-190, 23CR440425-190

STATE OF NORTH CAROLINA

v.

ROGER WAYNE STOCKTON, Defendant.

Appeal by Defendant from judgments entered 17 July 2024 by Judge Tessa S. Sellers in Cherokee County Superior Court. Heard in the Court of Appeals 10 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Elizabeth G. Arnette, for the State.*
>
> *Appellate 25-214 State v. Stockton_eDock v0Defender Glenn Gerding, by Assistant Appellate Defender Callie S. Thomas, for Defendant–Appellant.*

MURRY, Judge.

Roger W. Stockton (Defendant) appeals from the trial court's denial of his motion to suppress. He also appeals the judgments entered upon his convictions for two counts of trafficking in methamphetamine and one count each of possession of firearm by a felon; possession of cocaine; possession with intent to manufacture, sell, or deliver cocaine; and possession of drug paraphernalia. For the reasons below, this

Court holds that the trial court did not err by denying Defendant's motion to suppress or in reaching the subsequent judgment.

## I.    Background

Around 9:00 p.m. on 20 October 2023, Cherokee County Sheriff Sergeant Hunter Wood was patrolling the area around Caney Creek Road in Murphy, North Carolina due to "complaints of drug activity." Upon observing a vehicle leaving a residence, he followed the vehicle, which "swerved" and "hit the white line," "abruptly braked," "activated a turn signal, and turned onto a private drive." Based on the vehicle's "failure to maintain lane control" and "suspicious activity from turning onto a private drive" immediately after leaving a residence, Sergeant Wood initiated a traffic stop by activating his emergency lights and radioing the stop to a dispatcher. The vehicle was "slow to stop" in response, continuing to travel down the private road for "[a]pproximately a quarter mile" despite having the opportunity to stop sooner.

As the vehicle came to a stop, Sergeant Wood observed the back passenger door open and Defendant run out of the vehicle into a clearing. Sergeant Wood exited his patrol vehicle and "began shouting commands" at Defendant to return. Defendant "eventually began complying" and walked back to Sergeant Wood, who detained him on the ground in handcuffs. He then walked Defendant to the patrol vehicle, during which Defendant told him that he had fled because "he had warrants out of Georgia." After a backup officer arrived on the scene, both he and Sergeant Wood searched the

vehicle and the area where Defendant was detained. Their search recovered methamphetamine, cocaine, fentanyl, a gun, and a set of scales. That same day, Defendant was arrested on drug trafficking and possession charges.

On 26 February 2024, a grand jury indicted Defendant for two counts of trafficking in fentanyl; two counts of trafficking in methamphetamine; and one count each of possession of firearm by felon; possession of cocaine; possession with intent to manufacture, sell, or deliver cocaine; and possession of drug paraphernalia. On 23 May 2024, Defendant moved to suppress all evidence seized as a result of the traffic stop on the grounds that Sergeant Wood lacked reasonable suspicion for the stop. At a suppression hearing on 15 July 2024, Sergeant Wood initially testified he had observed the vehicle swerve with two tires over the double yellow line. But after defense counsel refreshed his recollection, Sergeant Wood corrected his testimony to state that the vehicle's tires had "hit the white line." The trial court admitted into evidence the items defense counsel had used to refresh Sergeant Wood's recollection, namely, the body-camera footage of the incident, Sergeant Wood's subsequent traffic-stop report, and an excerpt from the incident-investigation report stating that the vehicle hit the white line. The trial court denied Defendant's motion to suppress that same day. In the order denying the motion, the trial court made no specific written finding about the nature of the traffic violation.

Two days later, the case came on for trial. Sergeant Wood testified at trial regarding the traffic stop, Defendant's flight from the vehicle, and the subsequent

search of the area where he detained Defendant. At the close of the State's evidence, Defendant moved to dismiss all charges, which the trial court denied. The trial court also denied Defendant's renewed motion to dismiss at the close of all evidence for all charges except the two counts of trafficking in fentanyl. The jury found Defendant guilty of two counts of trafficking in methamphetamine and one count each of possession of firearm by a felon; possession with intent to manufacture, sell, or deliver cocaine; possession of cocaine; and possession of drug paraphernalia.

During sentencing, Defendant stipulated to substantial similarity between his Georgia convictions and the corresponding North Carolina felonies of possession of firearm by a felon and hit and run with failure to stop causing serious injury or death. Defendant also stipulated to the State's calculation of his prior record level (PRL) as VI with 21 prior points. The trial court accepted Defendant's stipulation, and after a "review [of] the official code of Georgia as the body of law which embodies those particular charges," found his Georgia convictions to be substantially similar to the corresponding North Carolina felonies. Based on a determination of his PRL VI with 21 prior points, the trial court sentenced Defendant to 70–93 months in custody. Defendant timely appealed.

## II.   **Jurisdiction**

This Court has jurisdiction over Defendant's appeal of a final judgment of the trial court under N.C.G.S. §§ 7A-27, 15A-1444 because the trial court entered final judgments upon a jury's guilty verdicts to which Defendant pled not guilty. *See*

N.C.G.S. § 7A-27(b)(2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty).

### III.  Analysis

Defendant asks this Court to "reverse the trial court's order, grant [his] motion to suppress, set aside the judgment, and remand for further proceedings." He argues that the trial court plainly erred by denying his motion to suppress evidence and reversibly erred by miscalculating his PRL.[1] For the following reasons, this Court disagrees and holds that the trial court did not err on either count.

### A. Motion to Suppress

In challenging the trial court's denial of his motion, Defendant claims the State lacked reasonable suspicion for the traffic stop. Because Defendant failed to object to Sergeant Wood's traffic-stop testimony at trial, we review for plain error only. *See* N.C. R. App. P. 10(a)(4). To show plain error, a defendant must show that "a fundamental error occurred at trial" that "had a probable impact on the outcome, meaning that[,] absent the error, the jury probably would have returned a different verdict," and the error would "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158 (2024) (quoting

---

[1] Defendant also challenges the facial constitutionality of N.C.G.S. § 14-415.1. He did not preserve this challenge at trial. *See* N.C. R. App. P. 2, 10; *State v. Bursell*, 372 N.C. 196, 199 (2019) (constitutional arguments are unpreserved for review if not made at trial). We recently upheld the facial constitutionality of N.C.G.S. § 14-415.1 in *State v. Nanes*, 297 N.C. App. 863 (2025), and are bound by the decision of a prior panel of this Court, *see In re Civil Penalty*, 324 N.C. 373, 384 (1989). Because Defendant's argument is meritless under binding authority, we decline to invoke Rule 2 and dismiss Defendant's facial constitutional challenge to N.C.G.S. § 14415.1 as a result.

*State v. Lawrence*, 365 N.C. 506, 518–19 (2012)). For the reasons below, we hold that the trial court did not plainly err.

## 1. *Reasonable Suspicion*

Defendant asserts that Sergeant Wood  lacked reasonable suspicion for the traffic stop. Defendant claims this Court may consider only the events preceding Sergeant Wood's activation of his emergency lights to initiate the stop. He argues that the facts preceding the initiation of the stop did not give rise to reasonable suspicion; general drug complaints in the area and the driver's actions of touching the white line and turning onto a private drive were "not illegal or suspicious" per se. Defendant's argument misapprehends the totality of the circumstances and is without merit.

Both the Federal and State Constitutions protect an individual from "unreasonable searches and seizures," which include "brief investigatory detentions . . . involved in the stopping of a vehicle." *State v. Watkins*, 337 N.C. 437, 441 (1994); *see* U.S. Const. amend. IV, XIV; N.C. Const. art. I, § 20. A law enforcement officer may conduct a traffic stop only upon "reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Reasonable suspicion requires "only . . . a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *Watkins*, 337 N.C.  at 442 (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989)). It is a "less demanding standard than probable cause and requires a showing

considerably less than preponderance of the evidence." *Barnard*, 362 N.C. at 247 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In determining whether an officer had reasonable suspicion to justify a traffic stop, this Court considers "the totality of the circumstances" that the officer encounters. *State v. Mahatha*, 267 N.C. App. 355, 359 (2019) (quotation omitted).

In analyzing the totality of the circumstance to determine reasonable suspicion, our courts consider the lateness of the hour, *see State v. Brown*, 213 N.C. App. 617, 620 (2011), the area's "propensity toward criminal activity," *State v. Clyburn*, 120 N.C. App. 377, 381 (1995) (quotation omitted), and the suspect's driving patterns, *State v. Jones*, 96 N.C. App. 389, 395 (1989); *see also, e.g.*, *State v. Johnson*, 370 N.C. 32 (2017) (abrupt acceleration and turn), *State v. Otto*, 366 N.C. 134 (2012) (constant weaving in lane); *State v. Alvarez*, 385 N.C. 431 (2023) (failure to maintain lane control); *State v. Bullock*, 370 N.C. 256 (2017) (weaving over white line).

We find *State v. Mangum*, 250 N.C. App. 714 (2016), particularly instructive of the principle that "the reasonable suspicion inquiry includes events that occur between the initiation and the completion of a stop." *Id.* at 724. In *Mangum*, this Court reasoned that, because the defendant chose to continue driving in response to a police officer's activation of his emergency lights, "there was no submission to the officer's authority and therefore no seizure at that time." *Id.* at. 726. Rather, the traffic stop "occurred approximately two minutes later, when [the] defendant did in fact pull over." *Id.* Thus, this Court held that the trial court's reasonable-suspicion

inquiry "properly" considered "circumstances that arose after . . . [the officer's] activation of his blue lights but before [the] defendant's actual submission to police authority." *Id.* Thus, contrary to Defendant's assertion, the reasonable-suspicion inquiry for the traffic stop properly encompasses the events between Sergeant Wood's initiation of the stop and its completion. *See id.* at 724.

The totality of the circumstances supports Sergeant Wood's conclusion of reasonable suspicion of criminal activity. Contrary to Defendant's argument, our review need not determine whether every fact and circumstance is "illegal or suspicious," but whether the totality gives rise to reasonable suspicion. "[M]ultiple factors 'quite consistent with innocent travel' can, when viewed together, 'amount to reasonable suspicion.' " *Barnard*, 362 N.C. at 250 (quoting *Sokolow*, 490 U.S. at 9). Accordingly, "the key determination is not the innocence of an individual's conduct, but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (Brady, J., dissenting) (quoting *Sokolow*, 490 U.S. at 10).

Here, all the factors discussed above were present prior to Sergeant Wood's initiation of the stop. At night, in an area known for drug activity, Sergeant Wood observed the vehicle swerve and hit the white line. He also identified the vehicle as what "we . . . in the law enforcement community" "call . . . slow to stop" when it continued down the private road for "[a]pproximately a quarter mile" before stopping. *See Mangum*, 250 N.C. App. at 724 (considering failure to immediately stop after officer activates emergency lights as reasonable-suspicion factor); *United States v.*

*Miller*, 54 F.4th 219, 230 (4th Cir. 2022) (driver must pull over within a "reasonable" time after officer activates emergency lights). Based on the "totality of the circumstances, both before and after" Sergeant Wood "signal[ed] his intention to stop," the trial court properly concluded that reasonable suspicion existed for the traffic stop. *Mangum*, 250 N.C. App. at 719. Thus, this Court holds that the trial court did not plainly err by denying Defendant's motion to suppress.

### 2. *No Evidentiary Conflict*

In the alternative, Defendant asks this Court to remand for written findings of fact to resolve "material, controverted facts at the suppression hearing." Specifically, he argues that, because the State's "primary evidence" of reasonable suspicion for the traffic stop was the vehicle's "alleged lane violation," the trial court erred by failing to make findings of fact regarding whether the vehicle crossed over the double yellow line or touched the white line. We disagree.

In deciding a motion to suppress, the trial court "must set forth in the record . . . findings of facts and conclusions of law." N.C.G.S. § 15A-977(f) (2025). Our Supreme Court has clarified that, "[a]lthough the . . . directive [in N.C.G.S. § 15A-977] is in the imperative form, only a material conflict in the evidence—one that potentially affects the outcome of the suppression motion—must be resolved by explicit factual findings that show the basis for the trial court's ruling." *State v. Bartlett*, 368 N.C. 309, 312 (2015). "When there is no conflict in the evidence, the trial court's findings can be inferred from its decision." *Id.*

Here, although Sergeant Wood initially testified at the suppression hearing that he observed the vehicle swerve with two tires over the double yellow line, he corrected his testimony to state that the vehicle's tires "hit the white line" after defense counsel refreshed his recollection. *See* N.C. R. Evid. 612 (refreshing memory). The trial court also admitted into evidence the items defense counsel used to refresh Sergeant Wood's recollection, namely, the body-camera footage of the incident, his subsequent traffic-stop report, and an excerpt from the incident-investigation report stating the vehicle's tire had hit the white line. The trial court made no specific written finding about the nature of the traffic violation because no "material conflict in the evidence" would require explicit factfinding. *See Bartlett*, 368 N.C. at 312. Defendant introduced no conflicting evidence to Sergeant Wood's testimony that the vehicle's tire had touched the white line, and the trial court considered evidence corroborating this testimony. We thus infer that the trial court denied Defendant's motion to suppress based on its consideration of the evidence presented "in the light most favorable to the State." *State v. Norman*, 293 N.C. App. 744, 749 (2024). Accordingly, we hold that the trial court did not err by including no written finding regarding this uncontroverted issue.

## B. Prior Record Level

Second, Defendant claims that the trial court prejudicially erred by failing to calculate his PRL at 14 points and sentence him as a Level V offender. We disagree. This Court reviews a trial court's PRL calculation *de novo* to determine whether

"competent evidence in the record adequately supports the trial court's decision." *State v. Bohler*, 198 N.C. App. 631, 633 (2009). "Determination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense." *State v. Fortney*, 201 N.C. App. 662, 671 (2010). At sentencing, the State must prove substantial similarity "by a preponderance of the evidence," N.C.G.S. § 15A-1340.14(b) (2025), and "may establish the elements of an out-of-state offense by providing evidence of the statute law of such state." *State v. Sanders*, 367 N.C. 716, 718 (2014) (quotation omitted).

### 1. Default Class H/I Felonies

Defendant argues that the trial court should have classified his convictions for criminal interference with government property, fleeing or eluding a police officer, and theft by taking as Class 1 misdemeanors instead of Class H/I felonies under N.C.G.S. § 15A-1340.14, which in turn would add three total points to his PRL instead of six total points. We disagree.

The default rule under N.C.G.S. § 15A-1340.14 classifies an out-of-state conviction as "a Class I felony if the [out-of-state] jurisdiction . . . classifies the offense as a felony," or "as a Class 3 misdemeanor if the [out-of-state] jurisdiction . . . classifies the offense as a misdemeanor." N.C.G.S. § 15A-1340.14(e). Each prior conviction for a Class H or I felony adds two points to a defendant's PRL. *Id.* § 15A-1340.14(b)(4). If the State "classifies an out-of-state conviction as a Class I

felony" by default, then the State need not demonstrate substantial similarity. *State v. Hinton*, 196 N.C. App. 750, 755 (2009). Here, the State did not seek a higher classification than the default Class I felony for these three out-of-state convictions. Furthermore, any discrepancy between Class H and Class I felonies is irrelevant for sentencing purposes because both Classes add two points to Defendant's PRL and would not impact Defendant's sentence. Thus, the trial court properly applied the default rule under N.C.G.S. § 15A-1340.14 to classify Defendant's three Georgia convictions as North Carolina Class H/I felonies.

### 2. *Stipulation to Class F Felony*

Defendant further claims that the trial court erred by accepting his stipulation regarding his out-of-state conviction for hit and run causing serious injury or death, which he argues is substantially similar to a North Carolina Class 1 misdemeanor, and not to a Class F felony. At sentencing, the trial court accepted Defendant's stipulation to substantial similarity between his Georgia conviction for hit and run causing serious injury or death and a corresponding North Carolina offense, and to the State's PRL calculation of Defendant as a Level VI with 21 prior sentencing points. While "[s]tipulations as to questions of law are generally held invalid and ineffective," *State v. Hanton*, 175 N.C. App. 250, 253 (2006), the trial court's independent determination of substantial similarity here renders any invalidity in the stipulation non-prejudicial, *State v. Prevette*, 39 N.C. App. 470, 472 (1979).

Apart from Defendant's stipulation, the trial court reviewed "the official code

of Georgia as the body of law . . . which embodies those particular charges[,] and would find that they are substantially similar" to the North Carolina offenses "as presented on the particular record." The trial court properly determined substantial similarity by independently reviewing the relevant Georgia statutes. *See State v. Stafford*, 274 N.C. 519, 528 (1968) (quoting 1 N. C. Index 2d, *Appeal and Error* § 46 (1967). Thus, this Court holds that the trial court did not prejudicially err in calculating Defendant's prior record level.

## IV.    Conclusion

For the reasons discussed above, this Court holds that (1) the trial court did not plainly err by denying Defendant's motion to suppress, (2) Defendant's facial constitutional challenge to N.C.G.S. § 14-415.1 is meritless, and (3) the trial court did not prejudicially err in calculating Defendant's prior record level.

NO ERROR.

Judges TYSON and GORE concur.

Report per Rule 30(e).