NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0318n.06
Filed: April 26, 2005

No. 04-5786

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | On Appeal from the |
| Plaintiff-Appellee, | United States District Court for the |
| | Eastern District of Kentucky |
| v. | |
| ANTHONY RANDOLPH, | |
| Defendant-Appellant. | |

Before: KENNEDY and MOORE, Circuit Judges; and RESTANI, Judge.[*]

KENNEDY, Circuit Judge.

Defendant Anthony Randolph was indicted for knowingly and intentionally possessing with the intent to distribute five grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1). After his motion to suppress was denied, the Defendant conditionally pled guilty, reserving his right to appeal the adverse suppression order.

The Defendant appeals from the district court's denial of his motion to suppress on the ground that the evidence against him was obtained in violation of his Fourth Amendment rights.

_____

[*] The Honorable Jane A. Restani, Chief Judge for the United States Court of International Trade, sitting by designation.

1

Specifically, he argues that reasonable suspicion of criminal wrongdoing did not exist to justify the stop of the vehicle that he was driving.

For the following reasons, we AFFIRM the district court's order denying the Defendant's motion to suppress.

BACKGROUND

On June 9, 2003, at approximately 1:30 a.m., Ron Wietholter, an officer with the City of Covington Police Department, was patrolling the downtown area of Covington, Kentucky. As part of his duties that evening, Officer Wietholter had been advised to keep an eye on the hotels in the downtown Covington area since a hotel in downtown Covington had been robbed the previous night and a hotel in a nearby town had been robbed twice on June 4th. All these hotel robberies had occurred between midnight and 2:00 a.m. As Officer Wietholter pulled into the lot of the Hampton Inn in Covington, he noticed a dark car with dark-tinted windows leaving the lot. As he entered the lot, a security guard at the Hampton Inn flagged him down. The security guard informed Officer Wietholter that the car that had just pulled out of the lot had suspiciously circled the parking lot a couple of times. The security officer told Officer Wietholter that he thought the occupants of the car were "casing" the hotel. The security officer provided Officer Wietholter with a description of the car and the license number.

After speaking with the security officer, Officer Wietholter broadcast the car's description and license number to other officers in the area and proceeded in the direction the car had taken, which was eastward on Third Street, in search of the suspect vehicle. He found the suspect car leaving the driveway of a Waffle House restaurant. The car proceeded to travel westward on Third Street back toward the Hampton Inn. As Officer Wietholter pulled up behind

2

the car, Officer Brian Frodge fell in behind him. At the entrance to the Extended Stay hotel by a curb cut, Officers Wietholter and Frodge activated their emergency lights and sirens on their police cars. Rather than stop on Third Street, the suspect vehicle pulled into the parking lot of the Extended Stay Hotel, made a left turn across the front of the hotel and proceeded to drive slowly across the lot. Although Officer Wietholter activated his siren a couple more times, and although there were places where the car could have stopped in the parking lot in front of the hotel, the suspect vehicle did not stop. The suspect vehicle continued in front of the hotel and proceeded around the side portion of the building to the rear of the hotel. Before the vehicle reached the rear of the hotel, Officer Wietholter illuminated the vehicle's rear window with his mounted spotlight. Officer Wietholter observed the driver "doing a lot of moving around in the front seat." Officer Wietholter testified that it appeared that the driver was either leaning toward "the passenger side or under the seat." Based upon his experience, Officer Wietholter believed that the occupants might have bailed out and attempted to flee or that they may have been trying to conceal something. The suspect vehicle had proceeded approximately halfway across the rear of the Hotel when a third police car came around the hotel from the opposite side and blocked the exit. At this point, the car finally stopped.

Officer Wietholter asked the driver to get out and come back to the police car. The Defendant, who was driving, got out and met Officer Wietholter between the two cars. Officer Wietholter informed the Defendant of the information that he had received from the security guard at the Hampton Inn and asked the Defendant for permission to conduct a pat-down search. The Defendant consented. Upon conducting the search, Officer Wietholter felt what he believed to be a large amount of currency and something slippery like a "plastic baggie" in the

3

Defendant's pockets. Officer Wietholter then asked for and received permission to search the contents of the Defendant's pockets. Upon removing the contents, Officer Wietholter discovered a large bundle of small plastic baggies that Officer Wietholter recognized as being the type used for packing narcotics. Officer Wietholter then asked the Defendant for permission to search the car. The Defendant declined. Officer Wietholter then called for a drug detection dog to sniff the exterior of the Defendant's car. The dog gave a positive indication on the driver's side door. the officers searched the car and found a bag of marijuana. The police also found an Extended Stay America room key and asked the Defendant for consent to search the room. The Defendant declined and the officers obtained a warrant to search the room. The officers found 75.6 grams of marijuana, 14.278 grams of cocaine, and 20.714 grams of cocaine base in the hotel room.

ANALYSIS

The only issue presented in this appeal is whether reasonable suspicion of criminal wrongdoing existed to justify the stop of the Defendant's vehicle. We review reasonable suspicion determinations *de novo*. *United States. v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004).

An investigatory stop of a vehicle is permissible under the Fourth Amendment if supported by reasonable suspicion of criminal wrongdoing. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). Since an investigatory stop is less intrusive to one's personal security than an arrest, the level of suspicion necessary for such a stop is thus "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). For purposes of determining whether reasonable suspicion exists, the Supreme Court has instructed that a reviewing court must consider the "totality of circumstances . . . to see whether the

4

detaining officer has a particularized and objective basis for suspecting legal wrongdoing."

*United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted).

The Defendant raises two arguments in support of his position that he was unlawfully seized without reasonable suspicion. First, he claims, when the officers activated their lights while on Third Street, before the Defendant turned into the Extended Stay hotel lot, that he was seized. Since the officers' activation of their lights effected an investigatory detention, the argument continues, the officers needed reasonable suspicion *at this point* to justify it; any of the bases supporting the finding of reasonable suspicion discovered after this detention, the defendant notes, could therefore not be used to support a finding of reasonable suspicion. Because reasonable suspicion did not exist to justify the stop when the officers activated their lights, the Defendant concludes, he was unlawfully seized.

The Defendant recognizes that for one to be seized within the meaning of the Fourth Amendment, either physical force must be used or, where force is absent, submission to the assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The Defendant maintains, however, that he submitted to the officers assertion of authority when they activated their lights. He notes that, unlike the defendant in *Hodari D.*, he did not flee when the officers made an assertion of authority, but rather rolled his vehicle slowly to the back of the Extended Stay parking lot and stopped.

Although it is certainly true that the Defendant did not flee, the evidence does not show that he submitted to the officers' show of authority. While it is possible that a person driving a vehicle may be considered seized before he comes to a complete stop, for this conclusion to be reached the person driving the vehicle must submit to the officer's show of authority by, for

5

instance, pulling over to stop as soon as reasonably possible. In this case, the evidence shows that the Defendant did not pull over and stop as soon as reasonably possible after the officers activated their lights and sirens. Rather, the Defendant not only pulled into the Extended Stay's parking lot, but drove across the front lot, around the side, and nearly halfway across the rear of the hotel before coming to a stop. Moreover, this stop did not occur until a police car came around the hotel from the opposite side and blocked the exit. Since the Defendant was not seized within the meaning of the Fourth Amendment when the officers activated their vehicles' lights and sirens, at that point, the officers did not need to have a "particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273.

The Defendant next argues that the district court erred when it ruled that the Defendant's act of rolling his car to the back of the parking lot gave the officers reasonable suspicion that criminal activity was afoot. The Defendant mischaracterizes the district court's ruling. The district court did not hold that reasonable suspicion existed to justify the stop of the Defendant's vehicle merely on the ground that the Defendant rolled his car to the back of the hotel. Rather, the district court concluded that the officers had reasonable suspicion to detain the Defendant because of the following factors: 1) After being advised to keep an eye on the hotels in the downtown Covington area because a hotel had been robbed in that area the previous night and because a hotel in a nearby city had been robbed twice five days prior, all of which occurred between midnight and 2:00 a.m., Officer Wietholter received information around 1:30 a.m. that the Defendant's vehicle was potentially "casing" the Hampton Inn; 2) after Officer Wietholter located the suspect vehicle and activated his vehicle's lights and sirens, the Defendant did not stop his vehicle where he could have easily done so, but rather drove across the front of the

6

hotel's lot, around the side, and nearly halfway across the back lot before finally coming to a stop, and 3) upon illuminating the Defendant's vehicle, Officer Wietholter observed the Defendant make suspicious movements, leading Officer Wietholter to believe that he was either trying to conceal something or that he might bail out and flee. Based upon these facts, the district court properly denied the Defendant's motion to suppress, and thus we AFFIRM.