**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 14-4515**

───────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,

    v.

SKYLER JEVELLE HOLLEY,

        Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.   W. Earl Britt, Senior District Judge.  (4:14-cr-00006-BR-1)

───────────

Argued:  January 27, 2015        Decided:  February 27, 2015

───────────

Before NIEMEYER, THACKER, and HARRIS, Circuit Judges.

───────────

Reversed and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Thacker joined.

───────────

**ARGUED**: Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.  **ON BRIEF**: Thomas G. Walker, United States Attorney, J. Frank Bradsher, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.   Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Defendant-Appellee Skyler Jevelle Holley ("Holley") was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Holley filed a motion to suppress evidence seized by Deputy John McArthur ("McArthur") after an investigatory stop of a vehicle in which Holley was a passenger, on the ground that McArthur lacked reasonable suspicion to justify the stop. The district court granted the motion to suppress. The government appeals, arguing that under the totality of the circumstances, McArthur did have reasonable suspicion to conduct the stop. We agree and therefore reverse the district court's order.

**I.**

**A.**

The parties agree that McArthur's official written report of the incident and the few factual proffers in the suppression hearing provide the relevant facts. According to the report, McArthur was in Edenton, North Carolina, when the police chief radioed a "be on the lookout" ("BOLO") immediately after receiving a call from a confidential informant. The informant, identifying Holley by name, stated that Holley had "just" pulled a gun on someone near the Crown Mart on Oakum Street and then left the scene in a white Cadillac.

3

When McArthur heard the BOLO, he was "across town" from the Crown Mart on Virginia Avenue, where he saw a white Cadillac with two black males inside, heading north. McArthur testified that he had not met Holley previously but had seen a headshot of him, and the district court inferred from that testimony that McArthur knew Holley was a black man. McArthur judged that enough time had passed for the Cadillac to make it to his location from the Crown Mart, and believed that he had found the suspect vehicle.

McArthur turned on his car's blue lights and sped up to catch the Cadillac. When he was behind the vehicle, he activated his siren to indicate that the driver should pull over, noting that the front-seat passenger was "leaned back" in his seat and appeared to be "trying to hide his identity."

The Cadillac failed to stop and continued to travel north before making a right turn. Twice the vehicle appeared as though it was about to pull over, but did not. The Cadillac traveled at a "slow speed," but based on the "erratic" driving and failure to stop, McArthur believed that Holley was inside.

The vehicle then turned left into a driveway and stopped, and McArthur pulled in behind it. When he saw the front-seat passenger move to exit the vehicle, McArthur drew his weapon and ordered him back into the car. After a backup officer arrived, McArthur ordered the passenger to exit, and heard something fall

4

to the floor of the vehicle as the passenger stood up. The officers searched the passenger, found a loaded .38 caliber pistol in his pocket, and identified him as Holley. They also seized a second loaded .38 caliber pistol from the Cadillac, along with other items taken from the vehicle and from Holley's person.

**B.**

Holley was indicted on charges of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. He filed a motion to suppress the evidence, including the pistols, obtained pursuant to the investigatory stop of the Cadillac.

The district court granted Holley's motion, holding that McArthur did not have "reasonable, articulable" grounds to believe that the Cadillac he pulled over was the subject of the BOLO. The court considered the fact that the informant said that Holley was in a white Cadillac, and that McArthur would have known that Holley was a black male. But for the court, the combination of "a white Cadillac and a black male" was not enough to give rise to a reasonable suspicion that the particular white Cadillac observed by McArthur was the same white Cadillac wanted by the police. The district court noted that Cadillacs are common in the black community in rural eastern North Carolina and determined that being "slumped down

5

in a car seat a little bit" was not itself unusual enough to be suspicious.

The district court did not consider as part of its reasonable suspicion analysis anything that followed McArthur's activation of his siren – neither the Cadillac's failure to stop immediately nor the driving pattern that ensued. According to the district court, the Fourth Amendment required that reasonable suspicion be present at the moment McArthur ordered the Cadillac to stop, and so "the fact that this car took off and didn't stop is not a part of the equation."

The government filed a motion for an evidentiary hearing or to reconsider the motion to suppress on the existing record, which the district court denied. The government timely appealed.

## II.

In reviewing the district court's grant of a motion to suppress, we review its factual findings for clear error, construing the evidence in the light most favorable to the prevailing party. United States v. Laudermilt, 677 F.3d 605, 609 (4th Cir. 2012). The district court's legal conclusions are subject to de novo review, id., and at the suppression hearing in this case, the parties agreed with the district court that

6

whether there was reasonable suspicion for Holley's stop is largely a question of law.

We find that the district court erred as a matter of law when it excluded from its reasonable suspicion analysis the response to McArthur's order to stop – that is, the failure to stop immediately and the unusual driving pattern. As the district court recognized, under the Fourth Amendment, a seizure in the form of an investigatory stop is permissible only when it is supported by reasonable and articulable suspicion that criminal activity "may be afoot." United States v. Bumpers, 705 F.3d 168, 171 (4th Cir. 2013) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). So if, as the district court seems to have assumed, Holley was seized when McArthur activated his siren, then it would be appropriate to require that reasonable suspicion exist at that moment and to exclude from consideration McArthur's post-seizure observations.

The problem is that Holley was not seized within the meaning of the Fourth Amendment when McArthur ordered the Cadillac to stop. It is well established that a Fourth Amendment seizure requires either the application of physical force or – as relevant here – both an assertion of authority and submission or acquiescence to that show of authority. United States v. Watson, 703 F.3d 684, 689 (4th Cir. 2013) (citing California v. Hodari D., 499 U.S. 621, 626 (1991)). When

7

McArthur turned on his siren, ordering the Cadillac to pull over, he satisfied the "assertion of authority" prong. But because the Cadillac did not in fact pull over, there was no submission and hence no seizure at that time. See United States v. Smith, 396 F.3d 579, 586 & n.5 (4th Cir. 2005) (no seizure upon activation of police lights when car continued driving).

As a result, it is entirely proper for McArthur to justify his ultimate seizure of Holley with reference to facts that occurred after activation of the siren but before Holley's eventual submission to police authority, such as the Cadillac's initial failure to stop and what McArthur viewed as its subsequent "erratic" driving.[*] By failing to take account of these pre-seizure observations as part of its reasonable suspicion analysis, the district court improperly truncated its review.

As we have said many times, in assessing the validity of a Terry stop, a court must evaluate the "totality of the

_____

[*] At oral argument, the government initially took the position that acquiescence to authority, and hence a Fourth Amendment seizure, occurred in this case when the Cadillac came to a stop in the driveway. It also suggested, however, that the seizure might not have occurred until moments later, when McArthur, seeing signs that the passenger was preparing to exit the vehicle, drew his gun and ordered Holley to remain in the car. We need not address that issue here; under either account, the Cadillac's initial failure to stop and subsequent driving pattern come before the seizure, and should have been included in the district court's analysis.

circumstances" to determine whether the officer "had a particularized and objective basis for suspecting the person stopped of criminal activity." United States v. Hernandez-Mendez, 626 F.3d 203, 207 (4th Cir. 2010) (internal quotation marks omitted). Review of the facts and inferences supporting a Terry stop is holistic. United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008). Courts must look to the "cumulative information available to the officer," id. (internal quotation marks omitted), and may not rely on a "piecemeal refutation" of each individual fact to find that the officer lacked reasonable suspicion, United States v. George, 732 F.3d 296, 300 (4th Cir. 2013).

We need not consider whether the district court properly applied this standard in analyzing the facts that preceded McArthur's show of authority. Nor must we determine whether the facts that immediately followed activation of the siren, standing alone, would have been sufficiently suspicious to justify an investigative stop. It is enough in this case that once we take all of the facts together, adding to the district court's "equation" the Cadillac's initial failure to stop when McArthur activated his siren and McArthur's observations regarding the Cadillac's subsequent erratic driving, it is clear that the reasonable suspicion standard is met. See Smith, 396 F.3d at 586 (listing cases treating failure to stop and

9

continued driving after light or siren activation as contributing to reasonable suspicion).  Based on the totality of the circumstances prior to Holley's submission to authority, and considering the cumulative import of the information available to McArthur – including the match between the Cadillac he observed and the details and timing of the BOLO, Holley's posture in the passenger seat, the failure to stop when the siren was activated, and the erratic driving – we conclude that McArthur had reasonable suspicion sufficient to justify an investigatory stop of the vehicle.  The district court therefore erred in granting Holley's motion to suppress.

## III.

We reverse the district court's order and remand for proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>