ZACHARY, Judge.
 

 *714
 
 Where the trial court's findings of fact were supported by competent evidence, and its conclusions of law were supported by the findings of fact, the trial court properly denied defendant's motion to suppress the stop of his vehicle.
 

 I. Factual and Procedural Background
 

 On 1 March 2013 at approximately 6:55 p.m., Lieutenant James Andrews of the Grifton, North Carolina Police Department received an anonymous phone call about an intoxicated person driving a black,
 
 *715
 
 four-door Hyundai leaving a Dollar General store and traveling north on Highland Boulevard. Shortly thereafter, Lt. Andrews saw a black Hyundai drive north on Highland Boulevard,
 
 *110
 
 past the police station. Lt. Andrews observed that the vehicle was traveling roughly 20 miles per hour in a 35 miles-per-hour (m.p.h.) zone. After following the vehicle a short distance, Lt. Andrews watched it stop at the intersection of McCrae and Highland Streets-where there is no stop sign, traffic light, or traffic control device-for "longer than usual." The Hyundai resumed motion, turned right on McCrae Street, still proceeding at 20 miles per hour in a 35 m.p.h. zone, and then stopped at a railroad crossing for 15 to 20 seconds, although there was no train coming and no signal to stop. The first road that intersects McCrae Street after crossing the tracks is Gordon Street, and the next is Brooks Alley. After the Hyundai crossed the tracks, Lt. Andrews activated the blue emergency lights on his police cruiser and signaled the vehicle to pull over; it did not do so for another two to three blocks. This failure to yield, which lasted for approximately two minutes, prompted Lt. Andrews to "bump" his siren a number of times. The vehicle turned left onto Pitt Street, proceeded for approximately one hundred yards, and stopped in the middle of the road. Lt. Andrews arrested the driver, John Eddie Mangum (defendant), for impaired driving. Defendant was found guilty in district court, and appealed to superior court.
 

 Prior to trial in superior court, defendant moved to suppress the evidence obtained as a result of the traffic stop. On 20 August 2015, after a hearing on defendant's suppression motion, the trial court orally granted the motion in open court, and the State gave notice of appeal. On the next day, however, the trial court reversed its ruling and denied defendant's motion to suppress. The trial court entered a written order denying the suppression motion on 18 September 2015.
 

 The trial court's pertinent findings in its order denying the suppression motion were that: (1) Lt. Andrews received a concerned citizen report that a drunk driver operating a black, four-door Hyundai was headed north on Highland Boulevard; (2) while Lt. Andrews followed him, defendant drove well below the speed limit; (3) defendant stopped for an unusual period of time before making a right turn, despite the absence of a stop sign or light; (4) defendant stopped for approximately fifteen or twenty seconds before crossing the railroad tracks, despite the fact that no train was approaching; (5) defendant did not immediately stop when Lt. Andrews activated his blue lights, but instead continued driving for approximately two minutes and traveled another two or three blocks; and (6) defendant stopped in the middle of Pitt Street, a narrow
 
 *716
 
 road with no bank or curb. Based on these findings, the trial court concluded that "based upon the totality of circumstances, there was a reasonable and articulable suspicion to stop ... [d]efendant's vehicle."
 

 Defendant pleaded guilty and preserved his right to appeal the suppression ruling. The trial court sentenced defendant to six months' imprisonment, suspended the sentence, and placed defendant on supervised probation for 24 months. Defendant appeals.
 

 II. Standard of Review
 

 Our review of a suppression order is limited to determining "whether competent evidence supports the trial court's findings of fact and whether the findings [in turn] support the [trial court's] conclusions of law."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011). Because the trial court is "entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred[,]"
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 620 (1982), "[w]e accord great deference to [the] trial court's findings of fact," and any findings left unchallenged "on appeal are binding and deemed to be supported by competent evidence."
 
 State v. Knudsen
 
 ,
 
 229 N.C.App. 271
 
 , 275,
 
 747 S.E.2d 641
 
 , 645 (2013) (citation omitted). "This deference is afforded the trial judge because he is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of the witnesses."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 207,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 However, "[a] trial court's conclusions of law on a motion to suppress are reviewed
 
 de novo
 
 and are subject to a full
 
 *111
 
 review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court.... The conclusions of law 'must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' "
 
 Knudsen
 
 ,
 
 229 N.C.App. at 281
 
 ,
 
 747 S.E.2d at 649
 
 (citations omitted).
 

 III. Motion to Suppress
 

 A.
 
 Factual Findings
 

 Defendant first argues that one of the trial court's findings of fact is unsupported by the evidence and therefore erroneous. Specifically, defendant challenges Finding of Fact No. 25, which states in relevant part: "The Hyundai did not stop immediately in response to [Lt. Andrews'
 

 *717
 
 activation of the] blue lights, and instead continued two additional blocks east past Gordon Street and Brooks Alley."
 

 Lt. Andrews made four statements at the suppression hearing as to when he activated his blue emergency lights. On direct examination, Lt. Andrews stated that he activated his lights immediately after he crossed the railroad tracks, adding that "[w]e went two blocks ... [and] passed Gordon Street and Brooks Alley." On cross-examination, Lt. Andrews confirmed this statement, but shortly thereafter, he consulted his notes and indicated that his lights were activated at Brooks Alley. Toward the end of cross-examination, defense counsel asked, "And you also testified that you had your lights on at-maybe-you said Brook [sic] Alley-when you turned your blue lights on; is that correct?" to which Lt. Andrews replied, "Yes, ma'am." According to defendant, the "only reasonable inference to be drawn from this [statement] is that ... [Lt.] Andrews was revising his earlier testimony to conform with his notes, which indicated that he activated his blue lights at Brooks Alley."
 

 Our review of the written suppression order, however, reveals that the trial court explicitly addressed this discrepancy in Findings of Fact Nos. 22 and 23:
 

 22. ... Once the Hyundai crossed the railroad tracks, [Lt.] Andrews made the decision to activate emergency equipment and stop the Hyundai.
 

 23. On cross-examination by counsel for [d]efendant [Lt.] Andrews acknowledged that he wrote in his notes from the DWI stop that he activated his blue lights at Brook [sic] Alley.
 

 As a result, Finding of Fact No. 25 represents the trial court's reconciliation of Lt. Andrews' conflicting statements regarding the point at which he activated his blue lights. This finding is supported by Lt. Andrews' statement on direct examination and his confirmation of that statement on cross-examination. That Lt. Andrews went on to acknowledge that his notes differed from his recollection is of no moment. Our Supreme Court has specifically noted that when "supported by competent evidence, the trial court's findings of fact are conclusive on appeal, even if conflicting evidence was also introduced."
 
 State v. Wilkerson
 
 ,
 
 363 N.C. 382
 
 , 434,
 
 683 S.E.2d 174
 
 , 205 (2009) (citation omitted). "Furthermore, a trial court's resolution of a conflict in the evidence will not be disturbed on appeal[.]"
 
 State v. Steen
 
 ,
 
 352 N.C. 227
 
 , 237,
 
 536 S.E.2d 1
 
 , 7 (2000) (citation omitted). Properly harmonized, Findings of Fact Nos. 22, 23, and 25 suggest that the trial court credited Lt. Andrews' initial statements after
 
 *718
 
 it considered the differing statements he gave during the latter portions of his cross-examination. Acknowledging the trial court's resolution of conflicting testimony, we conclude that Finding of Fact No. 25 is supported by competent evidence and thus is binding on appeal.
 

 Defendant also argues that, based on the trial court's "comments" in Findings of Fact Nos. 30 and 31, defendant's "stop in the middle of Pitt St[reet] was insignificant in its determination that the stop was supported by reasonable suspicion[.]" Findings of Fact Nos. 30 and 31 read as follows:
 

 30. When it came to a stop, the Hyundai stopped in the middle of Pitt Street rather than along the uncurbed roadside. There is no ditch or bank along the roadsides on that section of Pitt Street. The Court noted [at the suppression hearing], however, that Pitt Street is a narrow road.
 

 *112
 
 31. [Lt.] Andrews testified that the Hyundai's position in the middle of the street had the potential to disrupt traffic flow along Pitt Street, but did not actually disrupt flow because no cars were traveling down that road at the time.
 

 Because it is not our prerogative to usurp the province of the trial court, we refuse to declare that Findings of Fact Nos. 30 and 31 include only extraneous information. Qualifications contained in those findings may be considered on appeal. Moreover, the trial court had to consider all the circumstances of the traffic stop, and despite defendant's assertions to the contrary-i.e., that the court included extra, insignificant information in its order-we must assume the court found the facts that were necessary to support its ruling. Accordingly, we reject defendant's contention that his stop in the middle of Pitt Street was wholly "insignificant" to the trial court's denial of the suppression motion.
 

 B.
 
 Reasonable Suspicion and Investigatory (
 
 Terry
 
 ) Stop
 

 1.
 

 General Principles
 

 In his principal argument on appeal, defendant contends that the trial court erred in denying his motion to suppress the stop. More specifically, defendant contends that because Lt. Andrews lacked reasonable suspicion to stop defendant, the stop violated the Fourth Amendment and Article I, Section 20 of the North Carolina Constitution. We disagree.
 

 The Fourth Amendment to the United States Constitution protects,
 
 inter alia
 
 , the "right of the people ... against unreasonable searches and seizures." U.S. Const. amend. IV. When government officials, including
 
 *719
 
 law enforcement agents, engage in the exercise of discretion and search or seize citizens, the Fourth Amendment imposes a standard of "reasonableness,"
 
 see
 

 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 20-21,
 
 88 S.Ct. 1868
 
 , 1879-80,
 
 20 L.Ed.2d 889
 
 , 905 (1968), upon their actions in order " 'to safeguard the privacy and security of individuals against arbitrary invasions[.]' "
 
 Marshall v. Barlow's, Inc.
 
 ,
 
 436 U.S. 307
 
 , 312,
 
 98 S.Ct. 1816
 
 , 1820,
 
 56 L.Ed.2d 305
 
 , 311 (1978) (quoting
 
 Camara v. Municipal Court
 
 ,
 
 387 U.S. 523
 
 , 528,
 
 87 S.Ct. 1727
 
 , 1730,
 
 18 L.Ed.2d 930
 
 , 935 (1967) ). The actions of law enforcement agents must comport with the Fourth Amendment, the requirements of which are "enforceable against the States through the Due Process Clause" of the Fourteenth Amendment.
 
 Mapp v. Ohio
 
 ,
 
 367 U.S. 643
 
 , 655,
 
 81 S.Ct. 1684
 
 , 1691, L.Ed.2d 1081, 1090 (1961).
 

 The language of Article I, Section 20 " 'differs markedly from the language of the Fourth Amendment to the Constitution of the United States.' " Nevertheless, Article I, Section 20 provides protection "similar" to the protection provided by the Fourth Amendment, ... and it is well-settled that both Article I, Section 20 and the Fourth Amendment prohibit the government from conducting "unreasonable" searches. Whether a search is unreasonable, and therefore prohibited by Article I, Section 20, and the proper tests to be used in resolving that issue " 'are questions which can only be answered with finality by [the North Carolina Supreme Court].' " The North Carolina Supreme Court has stated that we may not construe provisions of the North Carolina Constitution as according lesser rights than are guaranteed by the federal Constitution. ... Accordingly, we first determine whether the [stop] violates the Fourth Amendment; if so, the [stop] also violates Article I, Section 20. If we determine that the [stop] does not violate the Fourth Amendment, we may then proceed to determine whether Article I, Section 20 provides " 'basic rights
 
 in addition to
 
 those guaranteed by the [Fourth Amendment].' "
 

 Jones v. Graham Cty. Bd. of Educ.
 
 ,
 
 197 N.C.App. 279
 
 , 288-90,
 
 677 S.E.2d 171
 
 , 177-78 (2009) (emphasis added; citations omitted).
 

 North Carolina appellate courts are not bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court. Even so, despite the fact that they are not binding on North Carolina's courts, the holdings and underlying rationale of decisions
 
 *720
 
 rendered by lower federal courts may be considered
 
 *113
 
 persuasive authority in interpreting a federal statute.
 

 In re Fifth Third Bank
 
 ,
 
 216 N.C.App. 482
 
 , 488-89,
 
 716 S.E.2d 850
 
 , 855 (2011) (citations and quotation marks omitted),
 
 cert. denied
 
 ,
 
 366 N.C. 231
 
 ,
 
 731 S.E.2d 687
 
 (2012).
 

 In analyzing federal constitutional questions, we look to decisions of the United States Supreme Court[,] ... [and] decisions of the North Carolina Supreme Court construing federal constitutional ... provisions, and we are bound by those interpretations. We are also bound by prior decisions of this Court construing those provisions, which are not inconsistent with the holdings of the United States Supreme Court and the North Carolina Supreme Court.
 

 Johnston v. State
 
 ,
 
 224 N.C.App. 282
 
 , 288,
 
 735 S.E.2d 859
 
 , 865 (2012) (citing
 
 State v. Elliott
 
 ,
 
 360 N.C. 400
 
 , 421,
 
 628 S.E.2d 735
 
 , 749 (2006), and
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 ,
 
 379 S.E.2d 30
 
 (1989) ),
 
 aff'd
 
 ,
 
 367 N.C. 164
 
 ,
 
 749 S.E.2d 278
 
 (2013).
 

 In
 
 Terry
 
 , the United States Supreme Court held that police officers may initiate a brief, investigatory stop of an individual when "specific and articulable facts ..., taken together with rational inferences from those facts, reasonably warrant that intrusion."
 
 392 U.S. at 21
 
 ,
 
 88 S.Ct. at 1880
 
 ,
 
 20 L.Ed.2d at 906
 
 . A
 
 Terry
 
 stop is justified when the detaining officer has reasonable suspicion, that is, "a particularized and objective basis[,] for suspecting the particular person stopped of criminal activity."
 
 United States v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 417-18,
 
 101 S.Ct. 690
 
 , 694-95,
 
 66 L.Ed.2d 621
 
 , 629 (1981).
 

 2.
 

 The Point From Which Reasonable Suspicion Must Be Measured
 

 Before determining whether defendant's motion to suppress was properly denied, we must address a key issue pertaining to the scope of the trial court's "reasonable suspicion" analysis. At the suppression hearing, the State argued that a determination of when the
 
 Terry
 
 stop occurred-i.e., the point at which Lt. Andrews was required to have a reasonable suspicion of criminal activity-was dispositive in this case. To that end, after acknowledging that if defendant had been "stopped at the railroad tracks, [it] probably [would have been] a bad stop[,]" the State cited
 
 California v. Hodari D.
 
 ,
 
 499 U.S. 621
 
 ,
 
 111 S.Ct. 1547
 
 ,
 
 113 L.Ed.2d 690
 
 (1991), and contended that under the totality of the circumstances both
 
 before and after
 
 Lt. Andrews signaled his intention to pull defendant over, the eventual stop was supported by a reasonable suspicion of criminal activity. The essence of this argument is that the activation of an
 
 *721
 
 officer's emergency lights does not constitute an official stop (and therefore a seizure) in and of itself, but is merely an order to stop, with no concomitant seizure of the person. Therefore, the stop/seizure did not occur when Lt. Andrews activated his blue lights and bumped his siren; instead, it occurred when defendant yielded to this show of authority. According to the State, the window of inquiry into the existence of reasonable suspicion had to include defendant's failure to comply with the order to stop for approximately two minutes and his decision to park in the middle of Pitt Street.
 

 In rendering its oral ruling at the suppression hearing, the trial court excluded these two circumstances from its analysis:
 

 All right, we have a tip with no indicia of reliability and no corroboration. The conduct stopping at a-slow driving and stopping at a[n] intersection to turn right and stopping at a railroad crossing that falls within the broad range of what could be described as normal driving behavior. I'm going to grant the motion. It's close.
 

 However, the trial court appears to have considered these circumstances in the reversal of its initial, oral ruling, as the written order explicitly notes that the court reviewed
 
 Hodari D.
 
 before reaching its final decision on defendant's suppression motion
 

 As discussed above, we reject defendant's challenges to the trial court's factual findings regarding his failure to immediately comply with the order to stop and his eventual stop in the middle of Pitt Street. Yet defendant further argues that these circumstances, which emerged after Lt. Andrews activated his blue lights, should not have factored into the trial court's ruling as a matter of law. In other words, defendant maintains that the
 
 *114
 
 trial court's inquiry into the existence of reasonable suspicion should have been confined to events that occurred
 
 before
 
 Lt. Andrews ordered defendant to stop. According to this view, the stop occurred-and defendant was seized-when Lt. Andrews activated his blue lights, and events that occurred after that point were improperly considered.
 

 In contrast, the State asserts that the circumstances Lt. Andrews observed after activating his lights and bumping his siren were properly considered, and supported the trial court's ultimate conclusion that the stop passed constitutional muster
 

 Accordingly, this matter presents the questions of (1) when the stop officially occurred, and (2) at what point during the process of the stop Lt. Andrews was required to have reasonable suspicion.
 

 *722
 
 The Fourth Amendment's protections are applicable only to "searches and seizures" within the meaning of the federal constitution.
 
 Terry
 
 ,
 
 392 U.S. at 16
 
 ,
 
 88 S.Ct. at 1877
 
 ,
 
 20 L.Ed.2d at 903
 
 . The United States Supreme Court announced in
 
 Terry
 
 that "[o]nly when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [it be] conclude[d] that a 'seizure' has occurred."
 
 392 U.S. at
 
 19 n. 16,
 
 88 S.Ct. at
 
 1879 n. 16,
 
 20 L.Ed.2d at
 
 905 n. 16. In
 
 United States v. Mendenhall
 
 , the Court established the principle that a person is seized "
 
 only if
 
 , in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."
 
 446 U.S. 544
 
 , 554,
 
 100 S.Ct. 1870
 
 , 1877,
 
 64 L.Ed.2d 497
 
 , 509 (1980) (opinion of Stewart, J.) (emphasis added). The
 
 Mendenhall
 
 decision instituted an objective test as to when a seizure occurs.
 

 The United States Supreme Court, however, clarified this holding in
 
 Hodari D.
 
 when it concluded that the "only if" language used in
 
 Mendenhall
 
 "states a
 
 necessary
 
 , but not a
 
 sufficient
 
 , condition for seizure-or, more precisely, for seizure effected through a 'show of authority.' "
 
 Hodari D.
 
 ,
 
 499 U.S. at 628
 
 ,
 
 111 S.Ct. at 1551
 
 ,
 
 113 L.Ed.2d at 698
 
 . The
 
 Hodari D.
 
 Court rejected the notion that a defendant is seized upon a police officer's mere exhibition of authority, and held that a Fourth Amendment seizure requires either the application of physical force or submission to an officer's show of authority.
 

 Id.
 

 at 626
 
 ,
 
 111 S.Ct. at 1550-51
 
 ,
 
 113 L.Ed.2d at 697
 
 . Consequently,
 
 Hodari D.
 
 introduced the possibility of a subjective element into Fourth Amendment seizure analysis: an individual's decision either to disregard the show of authority or to yield to it may determine the existence of a seizure.
 

 In
 
 Hodari D.
 
 , two police officers were patrolling a high-crime area in an unmarked vehicle when they observed a group of youths, including the defendant, huddled around a car.
 

 Id.
 

 at 622
 
 ,
 
 111 S.Ct. at 1548
 
 ,
 
 113 L.Ed.2d at 695
 
 . When the officers approached the car, the youths dispersed.
 

 Id.
 

 at 623
 
 ,
 
 111 S.Ct. at 1548
 
 ,
 
 113 L.Ed.2d at 695
 
 . One of the officers exited the patrol car, pursued the defendant through an alley, and eventually overtook him.
 

 Id.
 

 During the pursuit but before the officer tackled and handcuffed him, the defendant "tossed away what appeared to be a small rock[,]" which was later determined to be crack cocaine.
 

 Id.
 

 The defendant moved to suppress evidence of the cocaine in a California juvenile court, but the motion was denied.
 

 Id.
 

 The California Court of Appeals reversed, holding that the defendant "had been 'seized' when he saw [the officer] running towards him, that this seizure was unreasonable under the Fourth Amendment, and that the evidence of cocaine had to be suppressed as the fruit of that illegal seizure."
 

 Id.
 

 *723
 
 In reversing the California Court of Appeals' decision, the United States Supreme Court both "accept[ed] as true for purposes of [its] decision[ ] that [the police] pursuit qualified as a show of authority calling upon [the defendant] to halt[,]"
 

 id.
 

 at 625-26
 
 ,
 
 111 S.Ct. at 1550
 
 ,
 
 113 L.Ed.2d at 697
 
 (internal quotation marks omitted), and "rel[ied] entirely upon the State's concession" that the police "did not have the reasonable suspicion required to justify stopping [the defendant]" at the moment they gave chase.
 

 Id.
 

 at 623-24 n.1,
 
 111 S.Ct. at
 
 1548 n.1,
 
 113 L.Ed.2d at
 
 695-96 n.1 (internal quotation marks omitted). As a result, the Court held that even if the officers did not have reasonable suspicion
 
 *115
 
 to effectuate an investigatory stop when the pursuit began, the cocaine evidence should not have been suppressed because the defendant failed to comply with the officers' original show of authority and thus was not seized when he tossed the drugs aside.
 

 Since
 
 Hodari D.
 
 , courts across this nation have considered whether events that occur between an officer's initial "show of authority" and an individual's actual seizure may be considered when determining if the police had reasonable suspicion to justify a
 
 Terry
 
 stop. Several states have rejected
 
 Hodari D.
 
 on state constitutional grounds and afforded their citizens heightened privacy protections.
 
 See, e.g.
 
 ,
 
 State v. Garcia
 
 ,
 
 147 N.M. 134
 
 ,
 
 217 P.3d 1032
 
 (2009) ;
 
 State v. Randolph
 
 ,
 
 74 S.W.3d 330
 
 (Tenn. 2002) ;
 
 Baker v. Commonwealth
 
 ,
 
 5 S.W.3d 142
 
 (Ky. 1999) ;
 
 State v. Young
 
 ,
 
 135 Wash.2d 498
 
 ,
 
 957 P.2d 681
 
 (1998) (en banc);
 
 Commonwealth v. Stoute
 
 ,
 
 422 Mass. 782
 
 ,
 
 665 N.E.2d 93
 
 (1996) ;
 
 Commonwealth v. Matos
 
 ,
 
 543 Pa. 449
 
 ,
 
 672 A.2d 769
 
 (1996) ;
 
 State v. Quino
 
 ,
 
 74 Haw. 161
 
 ,
 
 840 P.2d 358
 
 (1992) ;
 
 State v. Oquendo
 
 ,
 
 223 Conn. 635
 
 ,
 
 613 A.2d 1300
 
 (1992). In so doing, most of these states have maintained
 
 Mendenhall
 
 's "free-to-leave" test as the proper measure of a seizure under their state constitutions.
 

 Other state courts have adopted
 
 Hodari D.
 
 's seizure analysis and considered circumstances that arose after a suspect's failure to comply with an officer's order to stop.
 
 E.g.
 
 ,
 
 Williams v. State
 
 ,
 
 212 Md.App. 396
 
 ,
 
 69 A.3d 74
 
 (2013) ;
 
 In re Kelsey C.R.
 
 ,
 
 243 Wis.2d 422
 
 ,
 
 626 N.W.2d 777
 
 (2001) ;
 
 People v. Archuleta
 
 ,
 
 980 P.2d 509
 
 (Colo. 1999) (en banc);
 
 State v. Weaver
 
 ,
 
 259 Kan. 844
 
 ,
 
 915 P.2d 746
 
 (1996) ;
 
 Perez v. State
 
 ,
 
 620 So.2d 1256
 
 (Fla. 1993). Under these decisions, the reasonable suspicion inquiry does not begin when police issue an order to stop; rather, it begins when the suspect actually yields to that show of authority.
 

 In the federal context, some circuit courts of appeal have emphasized that a stop should be justified at its inception.
 
 See
 

 Feathers v. Aey
 
 ,
 
 319 F.3d 843
 
 , 848-49 (6th Cir. 2003) ("The question is whether, at the moment that they initiated the stop, the totality of the circumstances
 
 *724
 
 provided the officers with the reasonable suspicion required in order to detain a citizen under
 
 Terry
 
 .");
 
 United States v. Finke
 
 ,
 
 85 F.3d 1275
 
 , 1279 (7th Cir. 1996) ("Under
 
 Terry
 
 the stop must be justified at its inception...."). However, the weight of authority in the federal appellate courts is that, under
 
 Hodari D.
 
 , a suspect postpones the point of seizure (and the beginning of the official stop) by failing to comply with an officers' initial show of authority.
 
 See, e.g.
 
 ,
 
 United States v. Simmons
 
 ,
 
 560 F.3d 98
 
 , 105-07 (2d Cir. 2009) ;
 
 United States v. Waterman
 
 ,
 
 569 F.3d 144
 
 , 145-46 & n. 3 (3d Cir. 2009) ;
 
 United States v. Muhammad
 
 ,
 
 463 F.3d 115
 
 , 123 (2d Cir. 2006) ;
 
 United States v. Randolph
 
 ,
 
 131 Fed.Appx. 459
 
 , 462 (6th Cir. 2005) ;
 
 United States v. Swindle
 
 ,
 
 407 F.3d 562
 
 , 567-69 (2d Cir. 2005) ;
 
 United States v. Smith
 
 ,
 
 396 F.3d 579
 
 , 586 n. 5 (4th Cir. 2005) ;
 
 United States v. Valentine
 
 ,
 
 232 F.3d 350
 
 , 358-59 (3d Cir. 2000) ;
 
 United States v. Johnson
 
 ,
 
 212 F.3d 1313
 
 , 1316-17 (D.C. Cir. 2000) ;
 
 Watkins v. City of Southfield
 
 ,
 
 221 F.3d 883
 
 , 889 n. 3 (6th Cir. 2000) ;
 
 United States v. Santamaria-Hernandez
 
 ,
 
 968 F.2d 980
 
 , 981-83 (9th Cir. 1992) ;
 
 see also
 

 United States v. Walraven
 
 ,
 
 892 F.2d 972
 
 , 975-76 (10th Cir. 1989) (pre-
 
 Hodari D.
 
 case holding that reasonable suspicion existed for investigatory stop in part because vehicle failed to stop promptly in response to police lights). The principle underscored by these decisions is that the reasonable suspicion inquiry includes events that occur between the initiation and the completion of a stop.
 

 Recently, the Fourth Circuit reiterated this principle in the context of traffic stops, and held that "it is entirely proper for [a police officer] to justify his ultimate seizure of [a suspect] with reference to facts that occurred after activation of the siren but before [the suspect's] eventual submission to police authority, such as [an] initial failure to stop[.]"
 
 United States v. Holley
 
 ,
 
 602 Fed.Appx. 104
 
 , 107 (4th Cir. 2015). In
 
 Holley
 
 , a police officer activated his blue lights to pull over the vehicle in which the defendant was a passenger, but the vehicle failed to stop and continued to drive "erratically."
 

 Id.
 

 at 105
 
 . The district court granted the defendant's motion to suppress firearms recovered from the eventual stop, and held: "[T]he fact that this car took off and didn't stop is not a part
 
 *116
 
 of the [reasonable suspicion] equation."
 

 Id.
 

 at 106
 
 . On appeal, the Fourth Circuit reversed and concluded that "[b]y failing to take account of these pre-seizure observations as part of its reasonable suspicion analysis, the district court
 
 improperly truncated its review
 
 ."
 

 Id.
 

 at 107
 
 (emphasis added).
 

 North Carolina decisions comport with the principles and the analysis recognized in
 
 Holley
 
 . Although our Supreme Court has never squarely addressed the point from which reasonable suspicion to conduct a
 
 *725
 

 Terry
 
 stop must be measured, it has cited
 
 Hodari D.
 
 in passing.
 
 [1]
 

 State v. Brooks
 
 ,
 
 337 N.C. 132
 
 , 142,
 
 446 S.E.2d 579
 
 , 586 (1994). By contrast, when confronted with situations where a suspect refused or failed to comply with an officer's show of authority, this Court has consistently applied
 
 Hodari D.
 
 's standard for determining when a seizure occurs under the Fourth Amendment.
 
 E.g.,
 

 State v. Eaton
 
 ,
 
 210 N.C.App. 142
 
 , 146-48,
 
 707 S.E.2d 642
 
 , 645-46 (2011) ;
 
 State v. Leach
 
 ,
 
 166 N.C.App. 711
 
 , 716-17,
 
 603 S.E.2d 831
 
 , 835 (2004) ;
 
 State v. West
 
 ,
 
 119 N.C.App. 562
 
 , 566,
 
 459 S.E.2d 55
 
 , 57-58 (1995). In addition, our courts have included events that occurred after an officer's order to stop in Fourth Amendment reasonable suspicion and probable cause analyses in both pre- and post-
 
 Hodari D.
 
 cases.
 
 See
 

 State v. White
 
 ,
 
 311 N.C. 238
 
 , 244,
 
 316 S.E.2d 42
 
 , 46 (1984) (reasonable suspicion for
 
 Terry
 
 stop existed where officer observed defendant's drunken appearance and where defendant failed to pull over in response to blue lights and only stopped in response to siren);
 
 State v. Atwater
 
 , --- N.C. App. ----,
 
 723 S.E.2d 582
 
 ,
 
 2012 WL 1333416
 
 , at *2 (2012) (unpublished) (citing
 
 Hodari D.
 
 and holding that: "[D]efendant did not stop upon Officer Modlin's activation of his patrol car's blue lights. Defendant fled from Officer Modlin at a high rate of speed, drove erratically, and ran two stop signs. Regardless of whether Officer Modlin had a reasonable suspicion that defendant was involved in criminal activity prior to turning on his blue lights, defendant's subsequent actions gave Officer Modlin reasonable suspicion to stop defendant for traffic violations.");
 
 State v. Milien
 
 ,
 
 144 N.C.App. 335
 
 , 342,
 
 548 S.E.2d 768
 
 , 773 (2001) (considering defendant's failure to immediately stop in response to officers' activation of blue lights in probable cause analysis);
 
 State v. Jordan
 
 ,
 
 120 N.C.App. 364
 
 , 367-68,
 
 462 S.E.2d 234
 
 , 237 (1995) (finding reasonable
 
 *726
 
 suspicion for stop existed, in part, based on defendant's failure to immediately pull over in response to officer's blue lights). Most importantly, in
 
 West
 
 , this Court held that an officer's questioning and attempted frisk of the defendant did not violate the Fourth Amendment and "decline[d] [the defendant's request] to reject the United States Supreme Court's
 
 Hodari D.
 
 standard" and afford greater protection against unreasonable searches and seizures under the North Carolina State Constitution.
 
 119 N.C.App. at 565-66
 
 ,
 
 459 S.E.2d at 57-58
 
 . Therefore, until our Supreme Court rules otherwise,
 
 West
 
 precludes any determination that Article I, Section 20 of our State Constitution provides a heightened, more protective, standard than the one compelled by
 
 Hodari D
 
 .
 

 Against this backdrop, we conclude that defendant was not seized within the meaning of the Fourth Amendment until he stopped his vehicle on Pitt Street. When Lt. Andrews
 
 *117
 
 activated his blue lights, he asserted his authority and ordered defendant to pull over. Yet because defendant chose to continue driving, there was no submission to the officer's authority and therefore no seizure at that time. Rather, the
 
 Terry
 
 stop occurred approximately two minutes later, when defendant did in fact pull over. Accordingly, the trial court's reasonable suspicion inquiry properly took account of circumstances that arose after Lt. Andrews' activation of his blue lights but before defendant's actual submission to police authority.
 

 3.
 

 Reasonable Suspicion Analysis
 

 We now consider whether Lt. Andrews had reasonable suspicion to stop defendant's vehicle. The reasonable, articulable suspicion standard articulated in
 
 Terry
 
 and its progeny has been applied to brief investigatory traffic stops.
 
 State v. Styles
 
 ,
 
 362 N.C. 412
 
 , 414,
 
 665 S.E.2d 438
 
 , 439 (2008). As this Court has recognized,
 

 "a traffic stop based on an officer's
 
 mere
 
 suspicion that a traffic violation is being committed, but which can only be verified by stopping the vehicle, such as drunk driving or driving with a revoked license, is ... justified if the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot."
 

 State v. Wilson
 
 ,
 
 155 N.C.App. 89
 
 , 94-95,
 
 574 S.E.2d 93
 
 , 98 (2002) (quoting
 
 State v. Young
 
 ,
 
 148 N.C.App. 462
 
 , 471,
 
 559 S.E.2d 814
 
 , 821 (2002) (Greene, J., concurring) (citations omitted)),
 
 appeal dismissed and disc. review denied
 
 ,
 
 356 N.C. 693
 
 ,
 
 579 S.E.2d 98
 
 (2003),
 
 overruled on other grounds by
 

 Styles
 
 ,
 
 362 N.C. at 414-15
 
 ,
 
 665 S.E.2d at 440
 
 . Although it is "not possible" to precisely articulate what constitutes "reasonable
 
 *727
 
 suspicion,"
 
 Ornelas v. United States
 
 ,
 
 517 U.S. 690
 
 , 695,
 
 116 S.Ct. 1657
 
 , 1661,
 
 134 L.Ed.2d 911
 
 , 918 (1996), the following principles should be considered in any judicial evaluation of an investigatory traffic stop pursuant to
 
 Terry
 
 .
 

 To begin, while the constitutional basis for a warrantless investigatory stop must rest on something "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity,"
 
 Illinois v. Wardlow
 
 ,
 
 528 U.S. 119
 
 , 124,
 
 120 S.Ct. 673
 
 , 676,
 
 145 L.Ed.2d 570
 
 , 576 (2000) (quoting
 
 Terry
 
 ,
 
 392 U.S. at 27
 
 ,
 
 88 S.Ct. at 1883
 
 ,
 
 20 L.Ed.2d at 909
 
 (internal quotation marks omitted)), only a "minimum level of objective justification" is required.
 
 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 7,
 
 109 S.Ct. 1581
 
 , 1585,
 
 104 L.Ed.2d 1
 
 , 10 (1989) (citation omitted).
 
 Terry
 
 's reasonable suspicion standard simply requires that "[t]he stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 441,
 
 446 S.E.2d 67
 
 , 70 (1994) (citing
 
 Terry
 
 ,
 
 392 U.S. at 21-22
 
 ,
 
 88 S.Ct. at 1879-80
 
 ,
 
 20 L.Ed.2d at
 
 906 ). As a result, reasonable suspicion may be demonstrated through an evidentiary showing that is "considerably less than [a] preponderance of the evidence."
 
 Wardlow
 
 ,
 
 528 U.S. at 123
 
 ,
 
 120 S.Ct. at 675
 
 ,
 
 145 L.Ed.2d at 576
 
 .
 

 In addition, an analysis of reasonable suspicion requires a complete review of the facts and circumstances supporting an investigatory stop.
 
 State v. Johnson
 
 , --- N.C. App. ----, ----,
 
 783 S.E.2d 753
 
 , 762 (2016). "Thus, context matters: actions that may appear innocuous at a certain time or in a certain place may very well serve as a harbinger of criminal activity under different circumstances."
 
 United States v. Branch
 
 ,
 
 537 F.3d 328
 
 , 336 (4th Cir. 2008). When assessing the legality of a
 
 Terry
 
 stop, the "totality of the circumstances" must be evaluated to ensure that the "whole picture ... [is] taken into account."
 
 Cortez
 
 ,
 
 449 U.S. at 417
 
 ,
 
 101 S.Ct. at 694-95
 
 ,
 
 66 L.Ed.2d at 629
 
 . "It is the entire mosaic that counts, not single tiles."
 
 United States v. Whitehead
 
 ,
 
 849 F.2d 849
 
 , 858 (4th Cir. 1988),
 
 abrogated on other grounds by
 

 Gozlon-Peretz v. United States
 
 ,
 
 498 U.S. 395
 
 ,
 
 111 S.Ct. 840
 
 ,
 
 112 L.Ed.2d 919
 
 (1991). Courts are therefore not permitted to consider each fact in isolation.
 
 United States v. Arvizu
 
 ,
 
 534 U.S. 266
 
 , 274,
 
 122 S.Ct. 744
 
 , 751,
 
 151 L.Ed.2d 740
 
 , 750 (2002) (rejecting the approach taken by the Ninth Circuit in attempting to delimit the extent to which certain factors may be considered as a type of "divide-and-conquer analysis"). Instead, courts must look at "the cumulative information
 
 *118
 
 available" to an officer who conducts a
 
 Terry
 
 stop,
 

 id.
 

 at 273
 
 ,
 
 122 S.Ct. at 750
 
 ,
 
 151 L.Ed.2d at 750
 
 , and refuse to find the stop unjustified based on a mere "piecemeal refutation of each individual" fact and inference.
 
 Whitehead
 
 ,
 
 849 F.2d at 858
 
 . This means "that multiple factors 'quite consistent with innocent travel' can, when viewed together, 'amount to reasonable suspicion.' "
 
 *728
 

 State v. Barnard
 
 ,
 
 362 N.C. 244
 
 , 250,
 
 658 S.E.2d 643
 
 , 647 (2008) (Brady, J., dissenting) (quoting
 
 Sokolow
 
 ,
 
 490 U.S. at 9
 
 ,
 
 109 S.Ct. at 1586
 
 ,
 
 104 L.Ed.2d at
 
 11 ). Accordingly, "the key determination is not the innocence of an individual's conduct, 'but the
 
 degree of suspicion
 
 that attaches to particular types of noncriminal acts.' "
 

 Id.
 

 (quoting
 
 Sokolow
 
 ,
 
 490 U.S. at 10
 
 ,
 
 109 S.Ct. at 1587
 
 ,
 
 104 L.Ed.2d at
 
 12 ).
 

 Finally, the legal evaluation of a police officer's reasonable suspicion determination must be grounded in a pragmatic approach. Reasonable suspicion is a "nontechnical conception[ ] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "
 
 Ornelas
 
 ,
 
 517 U.S. at 695
 
 ,
 
 116 S.Ct. at 1661
 
 ,
 
 134 L.Ed.2d at 918
 
 (citations omitted). Our nation's highest court has acknowledged that the "concept of reasonable suspicion is somewhat abstract" and has "deliberately avoided reducing it to a neat set of legal rules[.]"
 
 Arvizu
 
 ,
 
 534 U.S. at 274
 
 ,
 
 122 S.Ct. at 751
 
 ,
 
 151 L.Ed.2d at 750
 
 (citations and internal quotations marks omitted). As such, "common sense and ordinary human experience must govern over rigid criteria."
 
 United States v. Sharpe
 
 ,
 
 470 U.S. 675
 
 , 685,
 
 105 S.Ct. 1568
 
 , 1575,
 
 84 L.Ed.2d 605
 
 , 615 (1985). To that end, courts should "credit[ ] the practical experience of officers who observe on a daily basis what transpires on the street[,]"
 
 United States v. Lender
 
 ,
 
 985 F.2d 151
 
 , 154 (4th Cir. 1993), so as to avoid "indulg[ing] in unrealistic second-guessing" of law enforcement judgment calls.
 
 Sharpe
 
 ,
 
 470 U.S. at 686
 
 ,
 
 105 S.Ct. at 1575
 
 ,
 
 84 L.Ed.2d at
 
 616 ;
 
 Cortez
 
 ,
 
 449 U.S. at 418
 
 ,
 
 101 S.Ct. at 695
 
 ,
 
 66 L.Ed.2d at 629
 
 ("The process [by which reasonable suspicion is determined] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain commonsense conclusions about human behavior; jurors as factfinders are permitted to do the same-and so are law enforcement officers.")
 

 Defendant maintains that the anonymous tip was insufficient to create reasonable suspicion to stop him. He further argues that Lt. Andrews' observations prior to and after activating his lights were similarly insufficient.
 

 As to the concerned citizen report, we agree that an anonymous tip, absent "sufficient indicia of reliability[,]" is not on its own sufficient to create reasonable suspicion for a stop.
 
 Hughes
 
 ,
 
 353 N.C. at 207
 
 ,
 
 539 S.E.2d at
 
 630 (citing
 
 Florida v. J.L.
 
 ,
 
 529 U.S. 266
 
 , 270,
 
 120 S.Ct. 1375
 
 , 1378,
 
 146 L.Ed.2d 254
 
 , 260 (2000) ). Nevertheless, "a tip that is somewhat lacking in reliability may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration."
 

 Id.
 

 Here, it is insufficient that the tip accurately described defendant's vehicle and the direction in which it was heading.
 

 *729
 

 Hughes
 
 ,
 
 353 N.C. at 209
 
 ,
 
 539 S.E.2d at 632
 
 (recognizing that "reasonable suspicion does not arise merely from the fact that the individual met the description given to the officers");
 
 see also
 

 J.L.
 
 ,
 
 529 U.S. at 272
 
 , 120 S.Ct. at 1379,
 
 146 L.Ed.2d at 261
 
 (noting that an accurate tip may help police identify a person, but "does not show that the tipster has knowledge of concealed criminal activity"). A Fourth Amendment violation would likely have occurred if Lt. Andrews had stopped defendant's vehicle based solely on the tip.
 

 However, the tip was not the sole basis for the stop. The subsequent observations of Lt. Andrews "buttressed" the tip through "sufficient police corroboration[,]"
 
 Hughes
 
 ,
 
 353 N.C. at 207
 
 ,
 
 539 S.E.2d at 630
 
 , and those observations ultimately formed the basis for Lt. Andrews' suspicion of criminal activity. Lt. Andrews testified that defendant consistently drove roughly 15 miles below the 35 m.p.h. speed limit. This Court has recognized that driving substantially lower than the speed limit is a factor that may contribute to a police officer's reasonable suspicion in stopping a vehicle.
 
 See
 

 *119
 

 State v. Bonds
 
 ,
 
 139 N.C.App. 627
 
 , 629,
 
 533 S.E.2d 855
 
 , 857 (2000) ;
 
 see also
 

 State v. Aubin
 
 ,
 
 100 N.C.App. 628
 
 , 632,
 
 397 S.E.2d 653
 
 , 655 (1990) (noting that, based on prior precedent, "observations of a car going 20 miles an hour below the posted speed and weaving within its lane are sufficient to raise a reasonable suspicion that the driver is operating the vehicle while impaired") (citation omitted). In
 
 Bonds
 
 , we noted that the National Highway Traffic Safety Administration had stated that "driving ten miles per hour or more under the speed limit, plus staring straight ahead with fixed eyes, indicates a fifty percent chance of being legally intoxicated."
 
 139 N.C.App. at 629
 
 ,
 
 533 S.E.2d at 857
 
 . Furthermore, our Supreme Court has held that one dominant factor can create reasonable suspicion.
 
 Barnard
 
 , 362 N.C. at 248,
 
 658 S.E.2d at 645
 
 . The
 
 Barnard
 
 Court concluded that the defendant's thirty-second delay at a green traffic light gave rise to a reasonable, articulable suspicion that he may have been driving while impaired.
 

 Id.
 

 Here, Lt. Andrews located defendant's vehicle after receiving the concerned citizen report, and observed it traveling 20 miles per hour in a 35 m.p.h. zone. The vehicle stopped at the intersection of McCrae and Highland Streets-where there was no stop sign or signal to stop-for "longer than usual," turned right on McCrae Street, and continued traveling well below the speed limit. The vehicle stopped again at a railroad crossing. Although there was no train coming and no signal to stop, the vehicle remained motionless at the crossing for 15-20 seconds. After the Hyundai crossed the train tracks, Lt. Andrews activated his blue emergency lights and signaled the vehicle to pull over. However, defendant continued driving north on McCrae Street. Lt. Andrews bumped his
 
 *730
 
 siren, but still, the vehicle did not respond. Critically, defendant failed to yield for approximately two minutes, adding to the suspicion of criminal activity. Defendant eventually turned left onto Pitt Street, traveled one hundred yards, and stopped in the middle of the road. Although Pitt Street is a narrow road with no bank or curb, Lt. Andrews observed that defendant passed several safe places to pull over after the blue lights were activated.
 

 There are plenty of innocent explanations for each of these circumstances, but individual facts "susceptible of innocent explanation" may combine "to form a particularized and objective basis" for reasonable suspicion.
 
 Arvizu
 
 ,
 
 534 U.S. at 277
 
 ,
 
 122 S.Ct. at 753
 
 ,
 
 151 L.Ed.2d at 752
 
 . That is what happened here. From these facts, we conclude that Lt. Andrews was not acting on a mere hunch by the time defendant finally stopped his vehicle. Instead, Lt. Andrews made a judgment call based on his observation of several facts that, when taken together, reasonably indicated the possibility of criminal activity, namely that defendant was driving while impaired. Although defendant claims that all of his actions were consistent with normal driving behavior, "[i]t must be rare indeed that an officer observes behavior consistent [o]nly with guilt and incapable of innocent interpretation."
 
 United States v. Price
 
 ,
 
 599 F.2d 494
 
 , 502 (2d Cir. 1979) (citations omitted). We are also particularly mindful that "
 
 post hoc
 
 judicial review of police action should not serve as a platform for 'unrealistic second-guessing' of law enforcement judgment calls."
 
 Branch
 
 ,
 
 537 F.3d at 337
 
 (citation omitted). Accordingly, we hold that the trial court's findings, which are supported by competent evidence, support its conclusions of law. In sum, because the stop of defendant's vehicle was supported by Lt. Andrews' reasonable suspicion of criminal activity, it did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures.
 

 IV. Conclusion
 

 For the foregoing reasons, we conclude that the trial court properly considered events that occurred after Lt. Andrews activated his blue lights but before defendant complied with the order to stop. Based on the totality of the circumstances, Lt. Andrews possessed a reasonable, articulable suspicion that defendant might be engaged in criminal activity. Accordingly, we affirm the trial court's denial of defendant's motion to suppress.
 

 AFFIRMED.
 

 Judges ELMORE and ENOCHS concur.
 

 [1]
 

 We note that this Court and our Supreme Court have consistently applied
 
 Mendenhall
 
 's objective test to determine whether a defendant was seized under the federal constitution in the absence of physical force.
 
 See, e.g.
 
 ,
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 662-63,
 
 617 S.E.2d 1
 
 , 13 (2005) ;
 
 State v. Gaines
 
 ,
 
 345 N.C. 647
 
 , 663,
 
 483 S.E.2d 396
 
 , 406 (1997) ;
 
 State v. Isenhour
 
 ,
 
 194 N.C.App. 539
 
 , 543,
 
 670 S.E.2d 264
 
 , 267-68 (2008). However, as explained below, this Court has applied
 
 Hodari D.
 
 and held that a suspect who fails to submit to law enforcement authority is not seized within the meaning of the Fourth Amendment. Furthermore, the
 
 Mendenhall
 
 Court required more than a determination that a reasonable person would not have felt free to the leave when it stated: "We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards."
 
 446 U.S. at 553
 
 ,
 
 100 S.Ct. at 1877
 
 ,
 
 64 L.Ed.2d at 508
 
 . Finally, our Supreme Court has never rejected
 
 Hodari D.
 
 in favor of heightened seizure protections under our State Constitution. We are not aware of any North Carolina decisions holding, for example, that a suspect who disregards a police officer's show of authority is seized because a reasonable person would have submitted to the officer's command.