BERGER, Judge, dissenting.
I respectfully dissent.
"Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " State v. Barnard , 362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008) (quoting Illinois v. Wardlow , 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ). "The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch." State v. Otto , 366 N.C. 134, 137, 726 S.E.2d 824, 827 (2012) (citations and quotation marks omitted). "Moreover, a court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion exists." Barnard , 362 N.C. at 247, 658 S.E.2d at 645.
State v. Jones , --- N.C. App. ----, ----, 825 S.E.2d 260, 264 (2019). The "reasonable suspicion standard simply requires that '[t]he stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his *201 experience and training.' " State v. Mangum , --- N.C. App. ----, ----, 795 S.E.2d 106, 117 (2016) (quoting State v. Watkins , 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) ), writ denied, review denied , *510 369 N.C. 536, 797 S.E.2d 8 (2017). Generally, an anonymous tip is not sufficiently reliable to provide reasonable suspicion unless "it is buttressed by sufficient police corroboration." State v. Hughes , 353 N.C. 200, 207, 539 S.E.2d 625, 630 (2000).
"Reasonable suspicion is a commonsense, nontechnical conception[ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." State v. Heien , 366 N.C. 271, 280, 737 S.E.2d 351, 357 (2012) (purgandum ). "The process of [determining reasonable suspicion] does not deal with hard certainties, but with probabilities ...." United States v. Cortez , 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
In determining whether reasonable suspicion exists, "context matters: actions that may appear innocuous at a certain time or in a certain place may very well serve as a harbinger of criminal activity under different circumstances." Mangum , --- N.C. App. at ----, 795 S.E.2d at 117 (quoting United States v. Branch , 537 F.3d 328, 336 (4th Cir. 2008) ). "[T]he key determination is not the innocence of an individual's conduct, but the degree of suspicion that attaches to particular types of noncriminal acts." Id . at ----, 795 S.E.2d at 118 (citation and quotation marks omitted). For example, "driving substantially lower than the speed limit is a factor that may contribute to a police officer's reasonable suspicion in stopping a vehicle." Id .
Here, Officer Franks was dispatched to the area of Woodstock Road in Beaufort County at approximately 11:00 p.m. on January 8, 2016. Woodstock Road is in a remote, rural area. A concerned citizen had reported that a vehicle was in a ditch, and "the driver was attempting to get the vehicle pulled out by a truck." Officer Franks arrived approximately 10 minutes after being dispatched, and he observed an unoccupied Cadillac that was "catty-cornered" near a driveway. The Cadillac had mud on the driver's side. In addition, there were "gouges" in the road which caused Officer Franks to believe the Cadillac had left the roadway.
At the same time and place, Officer Franks also observed a truck approximately 200 feet in front of him on Woodstock Road. The truck was travelling fifteen to twenty miles per hour below the posted speed limit away from the Cadillac. Officer Franks did not encounter any other vehicles en route to Woodstock Road, or while he was on Woodstock Road that evening. Officer Franks pulled up behind the truck and initiated a traffic stop.
*511 Standing alone, the tip from the concerned citizen was not sufficiently reliable to justify the stop. However, the tip was "buttressed by sufficient police corroboration." Hughes , 353 N.C. at 207, 539 S.E.2d at 630 (citation omitted). At approximately 11:00 p.m., Officer Franks observed "gouges" in the roadway on Woodstock Road near the Cadillac. There was mud on the left side of the Cadillac, suggesting that the vehicle may have been in a ditch as the caller reported. Based upon Officer Franks' observations, a reasonable officer could infer that the Cadillac had left the roadway when it was being driven.
Further, Officer Franks only encountered two vehicles on Woodstock Road that evening. The two vehicles matched the description provided by the caller: a truck and a vehicle that appeared to have left the roadway. There was a high probability that the truck and the Cadillac off the roadway on a desolate rural road at 11:00 p.m. were the ones referenced by the concerned caller. These were the only two vehicles Officer Franks encountered that evening on Woodstock Road. Moreover, when he observed the only truck on the road, that vehicle was driving away from the area at a speed "substantially lower than the speed limit." Mangum , --- N.C. App. at ----, 795 S.E.2d at 118. This evidence created a sufficient degree of suspicion for Officer Franks to stop the truck and investigate what appeared to be a single-car accident from an impaired driving offense.
While there are many innocent explanations for what took place on Woodstock Road that evening, Officer Franks' observations *202 corroborated the information provided by the concerned caller that a driver that may have been impaired "was attempting to get the vehicle pulled out by a truck." The totality of the circumstances provided more than just a hunch that criminal activity was afoot. There was reasonable suspicion justifying the stop.
Because the trial court's findings of fact were supported by competent evidence, and those findings support the conclusions of law, I would affirm the trial court's order denying Defendant's motion to suppress.